[No. 12458.  Department Two. — December 16, 1889.]

JAMES RANKIN, Administrator etc., Respondent,
*v.* SISTERS OF MERCY,, a Corporation, Appel-
LANT.

Bailment — Deposit of Money — Pleading — Non-payment. — In an ac-
tion to recover money deposited with the defendant, an averment that
the defendant has neglected and refused to pay the money, though re-
quested to do so by the plaintiff, is a sufficient averment of non-payment,
and is equivalent to a statement that the defendant had failed and re-
fused to pay.

Appeal — Review of Conflicting Evidence — Inadmissible Evidence —
Objection to Evidence. — When there is a substantial conflict in the
evidence, the conclusion of the jury will not be disturbed by the appel-
late court; and conflict may be raised by facts and circumstances tend-
ing to contradict the direct evidence of a witness, though some of the
conflicting evidence might not have been admissible, if admitted without
objection, or upon insufficient objection.   Objections to evidence cannot
be raised for the first time upon appeal.

Mental Weakness — Undue Influence — Avoidance of Contract —
Pleading — Evidence — Instruction. — A plaintiff who seeks to avoid
a contract pleaded by the defendant, on account of undue influence and
unfair advantage taken of weakness of mind, is not required to plead
such matter of avoidance, in order to prove the same; and an instruction
upon that subject, if based upon evidence sufficient to warrant it, is not
outside of the issues.   Under our system of pleading, the plaintiff is
not required to reply to any new matter or affirmative defense set up in
the answer, but may meet it by any competent proof.

Appeal from a judgment of the Superior Court of the
city and county of San Francisco, and from an order
denying a new trial.

The facts are stated in the opinion.

*Hassett & Tevlin,* and *Theodore Bradley,* for Appellant.

*T. Z. Blakeman,* for Respondent.

Belcher, C. C. — Action to recover money alleged to
have been left with defendant on deposit; verdict and
judgment for plaintiff; appeal by defendant from the
judgment and an order denying a new trial.

It is alleged in the complaint that one Timothy Col-

lins died on the twenty-ninth day of August, 1883; that plaintiff is the administrator of his estate; that defendant is a corporation, organized under the laws of this state, and that at all the times mentioned in the complaint, it maintained and conducted a house, known as St. Mary's Hospital, wherein it received, boarded, lodged, and cared for persons for pay or hire; that on the tenth day of July, 1882, Collins became an inmate of said house, to be boarded, lodged, and cared for by defendant, and on the same day deposited with defendant the sum of two thousand dollars in gold coin; that the purpose of the deposit so made was to have the money safely kept by defendant, and a reasonable portion thereof applied in payment of the board, lodging, and care furnished him, and the balance thereof returned to him whenever he should depart from or cease to be an inmate of the house; that defendant received the money on the terms and conditions aforesaid, and agreed to observe the same; that Collins remained an inmate of the house and was cared for by defendant until he died; that ten dollars per week would be a reasonable compensation for the board, lodging, and care furnished him while he was an inmate of the house, and "that the balance of said sum of two thousand dollars, to wit, the sum of fourteen hundred dollars, is due and payable to the plaintiff by the defendant, and the defendant has neglected and refused to pay the same, or any part thereof, though requested to do so by plaintiff."

A general demurrer was interposed to the complaint, and "overruled for want of prosecution." The defendant then answered.

The answer denied that at the time named or at any other time, " Collins deposited with the defendant the sum of two thousand dollars in United States gold coin, or ever deposited any sum of two thousand dollars with the defendant, except as hereinafter stated "; denies that said sum of two thousand dollars was deposited with or

received by the defendant for the purposes, or on the terms and conditions stated in the complaint; denies that ten dollars per week would be a reasonable compensation for the board, lodging, and care of Collins while an inmate of the house, or that fourteen hundred dollars or any sum whatever is due or payable to plaintiff by defendant.

" And for a further and separate defense to this action," the answer alleges:—

" That the said Collins, on or about the date and time stated in the complaint, entered into a contract with the defendant, whereby the defendant agreed to admit the said Collins into the said hospital, and take care of, support, and maintain him during the remaining period of his natural life, and provide him with a home in said hospital, and in consideration therefor the said Collins agreed to pay, and did pay to the defendant, the sum of two thousand dollars, and thereupon entered the said hospital as his home under said agreement, and was cared for, boarded, and lodged therein by defendant until the said time of his death, according to the terms of the aforesaid agreement."

1. In support of the appeal it is claimed that the complaint did not state facts sufficient to constitute a cause of action, because there was no averment of non-payment. The averment was, that " defendant has neglected and refused to pay," etc. This we think is sufficient. To neglect to do a thing means to omit to do it, not to do it, and the averment was, therefore, equivalent to a statement that defendant had failed and refused to pay. (*O'Hanlon* v. *Denvir,* 81 Cal. 60.)

2. It is contended that the verdict was not justified by the evidence, and in support of this position several particulars wherein the evidence was insufficient are specified.

Testimony was introduced tending to show that Collins was an unmarried man, about sixty years of age,

and that he was diseased in body and somewhat shattered in mind. He had been employed as a laborer at the Mare Island Navy Yard for several years, and had accumulated something over four thousand dollars. He left Mare Island in March, 1882, and in July following entered the defendant's hospital. A few days afterward he gave into the hands of the Mother Superior, who had charge of the hospital, the sum of two thousand dollars, in gold coin, and she gave to him a receipt therefor. She also at some time or times entered in a hospital book memoranda as follows:—

"Timothy Collins
Paid............................$2,000 00
Came July 10, 1882. Died September 1, 1883."

In January, 1883, Collins drew from the Hibernia Bank the balance of his money, a little more than two thousand dollars. Of this money, he gave to the Mother Superior two hundred dollars, to pay his funeral expenses, and to a Catholic priest, Father Maraschi, two hundred dollars, to say masses. He also gave into the hands of the priest seven hundred dollars, for which he took the latter's promissory note. Speaking of this note, Father Maraschi testified that in August, 1883, "he (Collins) wanted me to keep the note then myself and keep the money to say masses.

"Q. Keep all of it?. A. And he told me he intended to bring three hundred dollars more, to make it a thousand. I told him then to keep the note until he would bring the other three hundred dollars.

"Q. And you did not take it; and the whole amount was to go to you to say masses, the whole amount represented by this note? A. Yes, sir.

"Q. And there was represented in the note at that time seven hundred dollars? A. Yes, sir.

"Q. Did he tell you where the three hundred dollars was? A. He mentioned he had to get it from the Sisters."

At that time the Mother Superior, as she testified, had none of Collins's money, except the two thousand dollars and the two hundred dollars, placed in her hands as above stated.

After Collins died, the note was found in his pocket, and sent to the maker. Father Maraschi testified: "A few days after he died, I don't know whether the same day, or one or two days after, they sent me a notice he had died, and sent me the note." The Mother Superior testified: "It remained in my hands for several months, . . . . and so I just sent it to him."

Witnesses were called by plaintiff to testify in regard to the physical and mental condition of Collins before and after he entered the hospital.

David Collins, a nephew, stated in substance that decedent was a single man, and had never been married; that he left Mare Island in March, 1882, to come to the city; that he was sickly then, and the witness thought a little out of his head; that he appeared to be weak; that before he left he lived alone by himself, in a little house, and did his own cooking; that he kept to the house a great deal, and was solitary in his habits; that he was a close attendant on the church. Witness had heard him say on different occasions that he had seen visions of his deceased sister; that he had seen spirits around him lots of times; that somebody came to his room at night and blew something through the key-hole at him.

Mrs. Rankin, a niece of decedent, stated that he was about sixty years of age at the time he was in the hospital, and was a very weak-minded sort of man; that he had consumption, and was very weak physically. He said the patients had blown sulphur through the key-hole and would take any money they could find; that he had seen his sister's vision, and that it was blown east, — went due east. You could never get him to talk on any subject, except about spirits and religion. He talked about spirits

and thought some one was going to try to do him harm. His mind was very weak.

The plaintiff, husband of the witness, Mrs. Rankin, stated that he had known decedent for about seven years before his death; that he saw him four or five times while he was in the hospital; that he was suffering from disease; he looked old; I would think he was suffering from consumption or from general debility of some sort; his physical condition was very bad; he was very much changed from what he was in Vallejo, five years before; he was very weak; whenever he started to converse about anything, it always wound up about hell; heard him speak about the death of his sister in the East; said he had seen her vision, and that just then she disappeared from him and this vision went due east; thought he must be weak in his mind when he was always talking about this fear of death.

In support of the affirmative defense set up in the answer, the Mother Superior was called as a witness and testified as follows: —

"Timothy Collins came to the St. Mary's Hospital in July, 1882. I have a memorandum in my books showing his coming there. When he came he presented a letter testifying to his good character, and saying he was no longer able to work, and he would like to make an arrangement to remain for life, and asked what I would charge him. I said it depended on what he had and his own circumstances, and without the least hesitation he said: 'I will give you two thousand dollars if you will keep me as long as I live,' and I had no hesitation, but concluded with him at once, and in a few days he came."

"Q. Did he do anything that day further than to say he would give you two thousand dollars? A. No; he only said that that day, and brought me a few days after, — a day or two after, — he brought me the money."

It is admitted by the answer, and clearly appears from the evidence, that defendant received from Collins the

sum of two thousand dollars about the time he was taken into the hospital. The plaintiff contended that the money was received under certain conditions, and the defendant that it was received under different conditions. The question for the jury to pass upon was, Which contention was best supported by the evidence?

It is urged for appellant that the only testimony as to the terms and conditions under which the money was received was that of the Mother Superior, and that her testimony was therefore controlling and conclusive. But we think there were other facts and circumstances which were properly submitted to the jury, and which tended to contradict the Mother Superior in important particulars, and to justify the verdict. For example, the statement of Collins, made just before he died, to Father Maraschi, that he would get from the Sisters and give to him three hundred dollars, when, according to the statement of the Mother Superior, he had no money subject to his disposal in her hands, is not in harmony with the theory of the defense. It is objected that this testimony was not admissible, but no objection to it was made during the trial, and the objection now comes too late. So it is objected that all the testimony in regard to the mental condition of Collins was inadmissible, because it did not appear that any one of the witnesses who testified upon that subject was an expert or an intimate acquaintance. But the only objection made to the testimony when it was offered was, that it was not in rebuttal, and this objection was properly overruled.

Looking at all the testimony, we cannot say that there were not sufficient contradictions to create a substantial conflict; and when such is the case, the well-settled rule is, that the conclusion of the jury will not be disturbed by the appellate court.

3. It is claimed for the appellant that the court erred in instructing the jury in respect to undue influence and unfair advantage. The claim is not, however, that the

instruction was erroneous as an abstract proposition of law, but that there was no issue as to undue influence, and no evidence of undue influence.

It is objected for respondent that there was no sufficient exception taken to the instruction complained of, and that the point made thereon cannot now be considered. But waiving that objection, we think that the issues raised by the pleadings were sufficient to justify the instruction. Under our system of pleading, the plaintiff is not required to reply to any new matter or affirmative defense set up in the answer, but it is deemed to be denied, and may be met by any competent proof. (Code Civ. Proc., sec. 462; *Curtiss* v. *Sprague*, 49 Cal. 301; *Colton L. & W. Co.* v. *Raynor*, 57 Cal. 588.)

And we also think that the evidence was sufficient to warrant the instruction. Collins was a religious devotee. He was sick, and the end of his earthly life was evidently not far distant. His mind was flighty, and he appears to have trusted implicitly in the Mother Superior. Under these circumstances, two thousand dollars seems a large sum to demand or take from him.

4. There is nothing to show that the damages were excessive, or that they were given under the influence of prejudice. If the plaintiff was entitled to recover at all, we think the amount found and awarded by the verdict not unreasonable in view of the testimony.

We find nothing in the record calling for a reversal, and we therefore advise that the judgment and order be affirmed.

HAYNE, C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.