[Civ. No. 560.  Third Appellate District.—January 28, 1909.]

## MARY A. BAKER, Respondent, v. ZACHARIAH D. BAKER, Appellant.

ACTION TO QUIET TITLE—ANSWER PLEADING DEED IN ESCROW—REPLICATION IN LAW—MATTER OF PROOF—FRAUD—NONDELIVERY.—In an action to quiet title, in which plaintiff alleged title, and a claim by defendant without right, if the defendant pleaded, by way of answer, a deed executed by plaintiff to defendant, and delivered to a third person in escrow, with instructions to deliver the same to defendant on the death of plaintiff, the law replies to such defense without the necessity of any other or further pleading, and plaintiff may avoid the deed by proof that the defendant procured the same by fraud and undue influence, and that plaintiff had no intention to deliver the deed or to part with control thereof, and notified the drawer of the deed to deliver it to her, and informed him that she intended to retain control thereof, and would retain possession of the same.

ID.—SUPPORT OF FINDINGS—TESTIMONY OF PLAINTIFF—CONFLICTING EVIDENCE.—The testimony of the plaintiff is sufficient to support findings for the plaintiff, notwithstanding the conflicting testimony for defendant to the contrary.

ID.—DELIVERY—QUESTION OF INTENTION.—The mere giving of a deed to a third person cannot constitute a delivery *per se*, or a delivery in escrow, or any delivery, the vital element in the act being the intention with which the act of parting with the instrument was done.

ID.—EVIDENCE OF FRAUDULENT SCHEME.—When it appears that the mother had previously executed a deed of gift to her son, but had studiously maintained exclusive possession and control thereof, evidence is admissible to show that the whole affair of a new deed to be drawn by the son's attorney, and kept by him as an escrow, involved a fraudulently conceived and executed scheme to enable the son to secure exclusive ownership of the entire estate of his mother, to the exclusion of the other children, for whose pretermission no good reason appears.

ID.—EVIDENCE- RELATION OF ATTORNEY AND CLIENT—INDEPENDENT ADVICE.—It was proper to question the attorney who drew the deed as to who paid him for his services, and whether plaintiff paid him anything, as bearing on the question whether the relation of attorney and client existed between plaintiff and the draftsman of the deed, and whether she received independent advice from the son's attorney.

9 Cal. App.—47

ID.—AMICABLE TERMS BETWEEN PLAINTIFF AND HER OTHER CHILDREN— ADMISSIBLE PROOF.—The testimony of the plaintiff was admissible to show that she was on amicable terms with her other children, as being proper and pertinent upon the question whether she would have signed the deed at all but for the persuasions and representations of her son and his attorney.

ID.—SUFFICIENCY OF EVIDENCE—SUBSTANTIAL CONFLICT—QUESTIONS OF LAW—REVIEW UPON APPEAL.—When the evidence is substantially conflicting, the sufficiency thereof to support the findings is not the subject of review upon appeal; but its review must be confined wholly to questions of law arising upon the record. It is only when the evidence, as matter of law, is too weak to support the findings that the appellate court can so declare.

APPEAL from a judgment of the Superior Court of San Joaquin County. F. H. Smith, Judge.

The facts are stated in the opinion of the court.

I. G. Zumwalt, and A. H. Carpenter, for Appellant.

Ashley & Neumiller, and Geo. F. Buck, for Respondent.

HART, J.—The complaint alleges that the plaintiff is the owner of certain real property, situated in San Joaquin county, and that the defendant claims an interest therein adversely to her; that the claim of the defendant is without any foundation whatever, he having no estate or interest in or right or title to said premises. The prayer is for judgment, quieting plaintiff's title to the land described in the complaint.

The answer denies plaintiff's ownership of the premises, admits that defendant claims an estate and interest in the same, and also interposes an affirmative defense, in which it is averred that the plaintiff conveyed to him said premises by deed, the same being set out in full, and further alleging that said deed was delivered in escrow to one A. H. Carpenter with instructions to the "escrowee" to deliver the same, upon the death of plaintiff, to the defendant.

The court below gave plaintiff judgment, from which, upon a bill of exceptions, the defendants present this appeal.

The main assault upon the judgment involves the contention that the findings upon which it rests are not supported by the evidence.

It may be well to explain at this point that, after the institution of this suit, the defendant, Zachariah D. Baker, died, and that thereafter, Jennie Baker, his widow, as the administratrix of his estate, and Raymond Baker et al., surviving children of the deceased, by said Jennie Baker, their guardian *ad litem,* and Jennie Baker, *in propria persona,* were substituted as parties defendants in the place of the said Zachariah D. Baker, deceased.

Before proceeding with an examination of the evidence for the purpose of ascertaining whether the findings are sufficiently supported thereby, we will consider the pleadings and the issues tendered thereby, it being argued by the appellants that certain evidence admitted at the trial was inadmissible thereunder.

The complaint, as we have seen, is in the ordinary form for actions to quiet title. The answer, as before observed, besides denying the averments of the complaint, sets up an affirmative defense, pleading that plaintiff, prior to the commencement of the suit, executed to the deceased Zachariah D. Baker a deed, conveying to him the land in controversy. At the trial plaintiff was sworn as a witness, testified that she was the owner of the land described in the complaint, was then in the possession thereof, and had been in such possession for many years before the inauguration of this action, and thereupon rested her case.

The defendants then introduced the purported deed in evidence and presented testimony showing the circumstances under which said deed was executed.

Upon the close of the case for the defendants, the plaintiff, in rebuttal, admitting the making of the alleged deed, offered and the court received evidence for the purpose of showing that the same had been procured through fraud and undue influence practiced upon her by her son, the grantee.

It is now contended by the appellants that evidence upon the questions of fraud and of undue influence was inadmissible, because no such questions were within the issues tendered by the pleadings; that such evidence could be pertinent only where fraud or undue influence, or both, had been specially pleaded and relied upon, and that no such issue having been made by the complaint, the court erred, to the prejudice of appellants, in allowing proof of the alleged fraudulent practices of the deceased and alleged acts of undue influence

claimed to have been exerted by him upon the plaintiff in the procurement of the execution by her of the deed set up in the answer.

The general rule is, it is true, that fraud is never to be presumed, and that when it constitutes an element of a cause of action or of a defense which is of an affirmative nature, and invoked as conferring a right against a party, it must be alleged. (*Whetherly* v. *Straus*, 93 Cal. 286, [28 Pac. 1045].) But the plaintiff's cause of action in the case at bar does not rest upon fraud, and the necessity of proving fraud appeared only after the answer of the defendant. (*Sterling* v. *Smith*, 97 Cal. 343, [32 Pac. 320].) The case of *Moore* v. *Copp*, 119 Cal. 433, [61 Pac. 630], was an action to quiet title to certain real property on which there was a granite quarry, the complaint being in the ordinary form for such relief. The defendant set up, as an affirmative defense, a certain instrument executed by plaintiff, by which the latter agreed to sell and convey to the defendant the portion of the land containing the quarry, etc. The court allowed a jury for the purpose of trying certain special issues, involving the mental competency of plaintiff to make the contract pleaded in the answer; whether the same was executed under undue influence of the defendant, or through fraud or by mistake. It was contended by the appellant in that case that the special issues were not properly allowed, because not alleged in the complaint. The supreme court held against that contention, saying: "In the first instance the law requires the defendant to answer; but, when he has done so, the law in the other instance operates to make answer for the plaintiff without any replication on his part. The many cases decided show various issues thus permitted to be tried, such as: The statute of limitations, in *Curtiss* v. *Sprague*, 49 Cal. 301; want of consideration, in *Colton etc.* v. *Raynor*, 57 Cal. 588; undue influence, in *Rankin* v. *Sisters of Mercy*, 82 Cal. 88, [22 Pac. 1134]; fraud, in *Sterling* v. *Smith*, 97 Cal. 343, [32 Pac. 320]. In the present case, plaintiff could not know, when she filed her complaint, that defendant would answer, nor that, if he did, he would claim under the instrument in question. After answer there was no pleading open to her under our system"; citing *In re Garcelon*, 104 Cal. 570, [43 Am. St. Rep. 134, 38 Pac. 414]; Pomeroy's Remedies and Remedial Rights, secs. 587, 588.

The evidence shows and the court finds, as we shall presently see, that the plaintiff was, at the time of the commencement of her suit, and had been for many years prior thereto, in the possession of the premises in controversy. She knew that she had made the deed pleaded in the answer; but, according to her testimony, which we must accept as representing a truthful narrative of the facts connected with that transaction, since the court below found it to be so, she explicitly declared to the grantee named in said deed and the alleged "escrowee" that she intended to call for and demand possession of the deed, and did in fact do so, thus clearly indicating an absence of intention to part with control and dominion over it, and it is therefore not to be supposed that she could anticipate the defense, if any, which her son might interpose against the relief sought by her, or that he would set up against her claim for a decree a deed which she had every reason to know was not a deed in law, because lacking in the essential element of delivery. Her complaint necessarily declared that the defendant claimed an interest in the land described in the complaint in conflict with her title thereto, and asked the court to require him to exhibit the nature of such claim so that she could show that the same was without right or any foundation. The defendant having in his answer, and not by way of cross-complaint, set forth the nature of his claim, it would indeed be a curious rule of pleading under our system which would estop her from proving, under the pleadings as they appear here, any fact which would show, or tend to show, the spuriousness of his claim. The evidence upon the questions of fraud and of undue influence was, in our opinion, clearly within the issues and admissible for the purpose of showing that, notwithstanding the deed relied upon by the defendant, she was, nevertheless, entitled to a decree quieting her title to the property in dispute.

The findings are, in our judgment, sufficiently supported by the proofs.

The history of the transaction out of which arises the claim of appellants to the property described in the complaint, as well as the facts bearing upon plaintiff's ownership of the same and upon the business relationship existing between the plaintiff and her son, Zachariah D. Baker, may be summarized as follows: The plaintiff had been in possession of the land in dispute, comprising about eighty acres, and had resided

thereon, for over forty years. It constituted about all the property she owned. The land, at the time of the signing of the deed in question, was valued at $100 per acre. Besides Zachariah, she had, when she signed said deed, four other children and a daughter of a deceased child, between all of whom and herself the most friendly relations had always existed. Her husband died about eight years previously to the commencement of this suit, and at that time (her children being of age and married), she resided alone upon the premises concerned here. About seven years before this action was commenced, Zachariah and his family took up their residence with her upon said farm, and continued to so reside with her for a period of about six years. It appears that Zachariah was in a bad state of health, having consumption, from which he died after the complaint herein was filed, and the plaintiff testified that while on the farm he did the ordinary chores about the place, but that whatever service he performed was under her direction and authority.

It seems that in the month of October, 1903, the plaintiff made a deed of gift of the land in controversy to her son, Zachariah, said instrument having been prepared by her attorney, Mr. Neumiller. She kept possession of this deed herself, being careful at all times not to allow it to leave her custody. Zachariah knew of the existence of said deed, and plaintiff testified that on one occasion, on her return to her farm, from which she had been temporarily absent, she looked to see whether the deed was in her trunk, where she had customarily kept the instrument, and discovered that it was missing. She thereupon asked Zachariah and his wife about it, and they admitted taking it from the trunk, placing it in a glass jar and depositing the jar in a "post-hole near the little brick house," situated on the farm. She finally succeeded in securing the return of the deed, and thereafter made a practice of carrying it with her. Zachariah had resorted to various futile devices to obtain possession of the instrument, and at last told his mother that the same was not "solid enough," as, in order to make it effective, it should show a consideration. It seems that Zachariah and his wife had consulted an attorney by the name of Carpenter, who had advised them to have a new deed drawn. In accordance with this suggestion, Zachariah induced his mother to accompany him to the office of

said Carpenter, in the city of Stockton, on the fifth day of January, 1906, and to consent to the making of a new deed. Plaintiff was at this time seventy-six years of age and in feeble health. She was a cripple, having some months previously sustained serious injuries in attempting to alight from a railway train. She had never met Carpenter before, and the transaction in his office was conducted when no other persons were present than said Carpenter, Zachariah and the plaintiff. She declared that, after signing the instrument, she demanded possession of it, and further testified: "Zachariah said, 'Let Mr. Carpenter keep it.' 'Yes,' Mr. Carpenter spoke up, 'I will take care of it; I will keep it.' I said, 'I want my own deed.' Zach. says, 'Let Mr. Carpenter keep it; you might lose it, or something.' I says, 'I will come back and get it then.' He took the deed and he laid it over on the other end of his desk." (The foregoing was not contradicted by Mr. Carpenter, who testified to said transaction.) The deed was placed in an envelope, upon the back of which Carpenter wrote the following words, to which the plaintiff attached her signature: "This deed that is enclosed in this envelope is to be delivered to Mr. Zachariah D. Baker at my death." Carpenter destroyed the first and retained possession of the new deed. The plaintiff repeatedly declared to Zachariah and Carpenter that she would return and secure possession of the deed, and on the first day of May, 1906, or approximately four months subsequently to the day she signed it, she called at the office of Carpenter and demanded that the instrument be given into her custody. Carpenter refused to comply with her demand, saying that "Zach. has been up here and tried to get it, too, but I would not give it to him." The new deed, as to the matter of consideration, contained the following: ". . . For and in consideration for the care and support heretofore received and to be hereafter given to her during the remainder of her lifetime by the said party of the second part, and of the sum of $10." No actual cash was received by the plaintiff for the deed.

Subsequently, Zachariah induced his mother to lease the farm. Carpenter, Zachariah's attorney, drew the lease, making the latter a joint lessor with the plaintiff and providing that the rents should be paid jointly to them, and that upon the expiration of the term possession of the farm should be

delivered to Zachariah. Plaintiff testified that she was in bed when she signed the lease and that the transaction was consummated against her real wishes in the matter.

Peter Baker, also a son of plaintiff, testified that he met and had a conversation with Zachariah a short time prior to his death, and that the latter said that he had made his mother give him "the place," referring to the premises in dispute.

There was other testimony, to which specific reference need not be made, in support of the finding of the court that the deed upon which the defendants rely was never delivered.

The undisputed facts clearly show, as seen, that the plaintiff was aged and enfeebled in health; that she was persuaded by Zachariah, through the false representation that the first deed of gift was not legally sufficient to transfer an impregnable title, to go to the office of and consult with his attorney, with whom she had had no previous acquaintance; that she was then without independent advice, and that, though signing the deed and the instructions relating to the disposition to be made of the instrument, she then demanded possession of the document, and, when eventually induced to leave it with Carpenter, she declared her intention of later calling for and receiving it into her own possession; that she did in fact subsequently demand its possession, which was refused by the alleged "escrowee."

The theory upon which the finding of the court upon the question of fraud rests is, undoubtedly, that Zachariah well knew, having previously consulted his attorney with respect thereto, that the deed of gift, delivered, would have involved a perfectly valid conveyance to him of the property, but that the point uppermost in his mind was to place it where there could be no question of its delivery, and that with such end in view he induced his mother, by misrepresentation, or at least by a mere unfounded pretext, to consent to the preparation by an attorney of his own selection of a new deed, and thus open up the opportunity, for which he had been persistently seeking, for placing the instrument in the hands of a friend as "escrowee," from whom delivery would readily follow upon the happening of the contingency upon which, by the terms of the instrument, it depended. In other words, the whole affair, under the well-supported theory of the findings, involved a fraudulently conceived and executed scheme to enable Zach-

ariah to ultimately secure ownership of practically the entire estate of his mother, to the exclusion of her other children, for whose pretermission no conceivable reason whatever is made to appear from the record. All the essential and vital findings of the court are abundantly sustained by the proofs, and are, therefore, beyond successful attack.

Appellant assigns a number of alleged errors in the court's rulings during the trial of the case, some of which we will notice.

Counsel for appellant asked the witness, Carpenter, this question: "Did she give up the control of it absolutely at the time it was signed by her?" The question referred to the conduct of plaintiff with reference to the deed after she had signed it, and called for a declaration from the witness as to the intent with which the plaintiff permitted the deed to remain in his possession. Obviously, it called for a conclusion of the witness, or his opinion as to whether there had been a delivery—a question which, manifestly, must be determined from all the facts and circumstances by which the act of parting with the possession of the instrument was performed. The mere giving a deed to a third party cannot, it is plain, constitute, *per se*, a delivery in escrow, or any delivery, for the vital element in the act is the intention with which the act of parting with the instrument was done.

The court refused to allow the witness Carpenter to answer the questions: "Were you the agent of the plaintiff in any way? And were you acting for her?" It is sometimes difficult to say whether such questions call for legal conclusions or for a fact. Of course, the proposition of whether one is acting as an agent of another is one which must, ordinarily, be determined from facts and circumstances characterizing their relations. We have little doubt but that counsel, by asking the witness if he was acting for the plaintiff, desired to ascertain whether the witness had been employed by plaintiff to act as her attorney in the transaction, and in that view, the court should have allowed an answer to the question, but even so, the error was cured by questions later asked the witness by counsel for plaintiff and of which complaint is made by appellants, as follows: "Who paid you for this work at this time? Did Mrs. Baker pay you?" Thus the witness was given an opportunity to state a fact which might or might not tend to

show, according to whether the questions were answered affirmatively or negatively, that he acted for her on the occasion referred to. These questions were pertinent for the purpose of disclosing whether or not the relation of attorney and client existed between the witness and the plaintiff, and the fact thus sought to be established was material for the purpose of showing whether the plaintiff received or did not receive independent advice in a transaction involving the alleged transfer of her entire estate.

The testimony given by plaintiff that she was on amicable terms with her other children was proper and pertinent as bearing upon the question of the intent with which she parted with the deed—that is, upon the question of whether it is probable she would have signed the deed at all but for the persuasions and misrepresentations of her son Zachariah and his attorney.

There are a few other points urged against the rulings of the court which do not involve substantial prejudice to the appellants, assuming such rulings to have been, strictly viewing them, erroneous.

As we have declared, the findings are amply supported, the decree well sustained and just, and the judgment is, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 27, 1909, and the following opinion was then rendered thereon:

HART, J.—The discussion in the petition involves only a repetition of the argument presented on behalf of the appellant in the briefs.

We deem it proper, however, to make a few further observations concerning one of the points insisted upon by appellant. But, before proceeding to do so, we should say that the original opinion contains the erroneous statement that Mrs. Baker called upon Carpenter and demanded the return of the deed upon which appellant relies to establish his title to the land in dispute in the month of May, 1906. The evidence discloses that the time at which the demand for the return of the

deed was made by the respondent was in the month of May, 1907. But this error cannot affect in the least the conclusion reached in the case. The testimony of the plaintiff is that she placed the deed in the custody of Carpenter with an understanding, so far as she was concerned, that she would subsequently call for and retake possession of it, and that she so declared to Zachariah and Carpenter at the time she signed the instrument and gave Carpenter possession thereof. She testified that she did subsequently demand that it be returned to her, and that Carpenter refused to comply with her demand. Upon this testimony, which was not contradicted, the court found that there had been no delivery. And if the testimony was true (and, of course, it must be assumed to be), no one will seriously contend that the court's finding and its conclusion of law therefrom are not supported by an impregnable foundation.

The learned counsel for the appellant seem to fail to understand that it is idle, and involves only a waste of time, to undertake to demonstrate to an appellate court in a case in which there exists at least a substantial conflict in the evidence that the testimony offered by the party against whom the findings have been made by the court below should be accepted in preference to that from which such findings have been deduced. Can the ingenuity of counsel suggest some test or criterion by which this court can consistently and justly declare that the court below should have rejected the testimony of the plaintiff as being untrue and accepted that of the defendants as disclosing as they actually occurred the circumstances of the transaction resulting in the signing of the deed and the placing of the same in the custody of Carpenter? The question may suggest a problem in psychology, but it is one which must, nevertheless, be solved and answered agreeably to the evident notion of counsel, if they would overturn the reason underlying the constitutional provision that the reviewing courts in California are limited to the consideration of questions of law alone, and that, to justify a reversal of a cause upon the ground of the insufficiency of the evidence to sustain the findings of fact, the record evidence must be such as to clearly warrant such court in declaring, as a matter of law, that it is too weak to support the findings.

We are satisfied with the conclusion arrived at upon all the points discussed in our former opinion.

The rehearing is denied.

Burnett, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 29, 1909.