[Civ. No. 1421.    Third Appellate District.—January 31, 1916.]

## J. H. PURCELL, Respondent, v. VICTOR POWER & MINING COMPANY (a Corporation), Appellant.

QUIETING TITLE—PORTION OF MINING CLAIM—FORMER JUDGMENT—LACK OF ESTOPPEL—DIFFERENT SUBJECT MATTER.—The plaintiff in an action involving the title and right of possession of two town lots forming a part or portion of a lode mining claim, of which the defendant was the owner, is not estopped by a judgment obtained by the defendant against the plaintiff in a previous action in ejectment to recover the possession of certain specific property situated within the exterior boundaries of the claim, where it appears from the pleadings and from the judgment that such action involved solely the question of the right to the possession of another and different portion or part of the claim.

ID.—ESTOPPEL BY JUDGMENT.—The 'force of an estoppel by judgment resides in the judgment itself, and not in the finding of the court or the verdict of the jury.

ID.—JUDGMENT—RES ADJUDICATA.—In order that a former judgment may be a bar to future proceedings, it must appear that such judgment necessarily involved the determination of the same fact to prove or disprove which it is pleaded or introduced in evidence. It is not enough that the question was one of the issues in the former suit, but it must appear to have been precisely determined.

ID.—ACQUISITION OF TITLE AFTER ISSUE JOINED—JUDGMENT NOT A BAR. The plaintiff in an action involving the title and right of possession of a fractional portion of a mining claim is not estopped by a former judgment in an action in ejectment involving a different part of the claim, by reason of the fact that the plaintiff did not acquire title to the property in the present action until one year after issue had been joined in the first action, where such fact was not set up by supplemental answer therein.

ID.—EVIDENCE—TITLE UNDER UNRECORDED DEED—CLAIM UNDER SUBSEQUENTLY RECORDED DEEDS—BONA FIDE PURCHASE—BURDEN OF PROOF.—Where one holding under an unrecorded deed brings an action involving the respective titles to the land against a subsequent grantee under a deed which is first recorded, the first grantee will prevail, unless the second grantee not only shows the making and recording of his deed, but also that he made his purchase and paid the price in good faith, and without the knowledge of the rights of the previous grantee.

ID.—RULE WHEN INAPPLICABLE.—Such rule, however, is inapplicable to the plaintiff in an action to quiet title to a portion of a lode mining claim, where the deed under which the defendant relied was not made known until after the plaintiff rested his case.

APPEAL from a judgment of the Superior Court of Shasta County.   J. E. Barber, Judge.

The facts are stated in the opinion of the court.

W. P. Johnson, and P. H. Coffman, for Appellant.

Bush & Hall, for Respondent.

HART, J.—The action involves the title and right of possession to certain real estate described as lots 1 and 2 of the town of Harrison Gulch, in Shasta County, said lots being a part or portion of the Bonanza lode mining claim, of which the defendant is the owner.

The amended complaint is in two counts, the first of which, after alleging that "for more than five years last past the plaintiff, by and through his grantors and predecessors in interest, has been the owner of and entitled to the possession of the real property" above referred to, charges that the "defendant, wrongfully and without right, claims to be the owner of the said premises above described adversely to the plaintiff, but that defendant's claim is without right, and that it has no right, title, or interest in or to said premises or any part or portion thereof."

By the second count·it is charged that "on or about the 15th day of December, 1909, while plaintiff was the owner of and entitled to the possession of the said premises, the defendant without any right and without the consent of plaintiff and against his will, entered into the possession of the said premises and ousted the plaintiff therefrom, and, ever since said date, has and does now withhold the possession thereof from plaintiff to his damage in the sum of five hundred dollars."

In a supplemental complaint, the plaintiff alleges that, ever since the commencement of this action, he has conducted a saloon business in a building known as the "Weyand Building," in Harrison Gulch; that said building was the property of the defendant; that there is no other building in Harrison Gulch suitable for the saloon business but the "Friedman Building," situated on the property in dispute in said town of Harrison Gulch, "and the said saloon business which plaintiff has heretofore been conducting at a profit of at least $480.00 per month has been totally destroyed"; that by reason of the facts thus stated "the plaintiff has suffered and is further damaged in the sum of $5,000.00."

The defendant, by its answer, denies that the plaintiff at any time was the owner or entitled to the possession of the property described in the complaint, and admitted, as the complaint charged, that it claims to be the owner of said property adversely to the rights of the plaintiff, and "denies that its claim is without right, and defendant denies that it has no right, title or interest in or to said premises or any part thereof, and it alleges that it is the owner in fee of the said property."

The defendant also set up a special defense by way of an estoppel. In this connection, the answer alleges that, in an action pending in the superior court of Shasta County at the

time of the commencement of the present action, and in which the defendant and the plaintiff herein were, respectively, plaintiff and defendant, the title to the property involved in this action was, as between the plaintiff and the defendant here, litigated, determined, and adjudicated; that, on the twenty-fifth day of July, 1910 (this action was commenced February 6, 1910), findings were filed and judgment entered in said former action in favor of the plaintiff therein (defendant herein) and against the defendant therein (plaintiff herein) ; "that the findings of the court in said action were to the effect, and the court thereby decided, that the plaintiff therein was the owner of all the land involved in the present action, and the judgment of the court in said action has now become final; that the subject matter of the present action was involved in the said action; that the plaintiff herein is estopped by the findings and judgment in the said action from maintaining this action."

The court found that the plaintiff was and is the owner and entitled to the possession of the property described in the complaint; that the defendant wrongfully and without right claims to be the owner of said premises adversely to the plaintiff, but that the defendant has no right, title, or interest in or to said premises or any part or portion thereof; that, on the fifteenth day of December, 1909, while the plaintiff was the owner and entitled to the possession of the said premises, the defendant wrongfully and without the consent and against the will of the plaintiff entered into the possession of the said property and ousted the plaintiff therefrom, and has ever since continued to withhold possession thereof from the plaintiff, to his damage in the sum of five hundred dollars.

The court found against the defendant on its plea of estoppel, and further found that the plaintiff had been, by the wrongful acts of the defendant, generally and specially damaged in certain specified amounts. These latter findings will receive more particular notice hereinafter.

In accord with the findings, the decree adjudged: 1. That the plaintiff was the owner of the property in dispute and entitled to the immediate possession thereof; 2. That the defendant has no estate or interest whatever therein; 3. That the defendant and all other persons claiming an interest or estate in said property be forever debarred from asserting any claim thereto or any part thereof or any interest or estate

therein or any part thereof adverse to the plaintiff; 4. That the plaintiff is entitled to and that he have and recover from the defendant damages in the sum of three thousand five hundred dollars, "together with his costs of suit, taxed at $40.95."

The defendant presents this appeal from the judgment and supports the same by a transcript of the testimony and proceedings taken and had at the trial, prepared in accordance with the provisions of sections 941a and 941b of the Code of Civil Procedure.

The general contention of the defendant is that the findings are without sufficient support from the evidence. We think that, in so far as is concerned the finding of special damages in the sum of three thousand dollars, this contention must be sustained. In view, however, of another trial, we conceive it to be proper to pass upon certain other important propositions involved in the issues.

1. The court was right in finding and deciding that the judgment obtained by the defendant against Purcell, the plaintiff herein, in the action numbered 3839 in the superior court of Shasta County, and entitled, "Victor Power and Mining Company, Plaintiff, v. John H. Purcell, Defendant," did not operate as an estoppel against the maintenance of the present action. Action No. 3839, which was in ejectment, to recover from Purcell possession of certain specific property situated within the exterior boundaries of the Bonanza mining claim, was commenced in the superior court in and for the county of Shasta on the twenty-ninth day of June, 1909. The complaint in said action, after alleging that the plaintiff "is now, and ever since the 5th day of October, 1907, has been the owner in fee and entitled to the possession of all those lands and premises, . . . known as the Bonanza mining claim, lands and premises" (describing the same), charged that Purcell, the plaintiff herein, on the sixth day of October, 1907, without right entered upon and ousted the plaintiff of the possession *of a part* of said mining claim, lands, and premises, and since said date has wrongfully withheld from the plaintiff in said action the possession of the same, and then follows a specific description of a certain lot upon which there are several buildings (a saloon building, known as the Weyand Building, a barn, and an ice-house), and which constituted a part of or were within the boundaries of the lands or prop-

erty known as the "Bonanza Mining Claim" premises. The lot and the buildings so referred to, it is admitted, are not the specific property in dispute in the present action nor any part thereof.

Although the answer filed by Purcell in said action denied that the plaintiff therein (defendant herein) at the times mentioned in the complaint in said action, or at any other time or at all, was the owner of the lands and premises known and described in said complaint as the "Bonanza Mining Claim lands and premises," it is clear that the vital and, indeed, the only live issue tendered by said pleading involved, not the question of the title or the right to the possession of the whole of the lands and property known as the "Bonanza Mining Claim lands and premises," but solely the question of the right to the possession of the particular lot or parcel of land included within the boundaries of the Bonanza claim, and which lot or parcel of land, with its improvements, constituted a part of the town of Harrison Gulch. The judgment does not purport to have adjudicated any other question. The judgment, while describing the property which Purcell was charged by the power company with having wrongful possession of as being a part of the Bonanza claim, does not adjudicate the question of the title to or the right of possession of the whole of said claim. It reads, in part: "Wherefore, by reason of the law and the findings, it is ordered, adjudged and decreed that plaintiff recover from the defendant, John Purcell, the following real property situate in the county of Shasta, state of California, to-wit: That lot and parcel of the Bonanza mining claim, lands and premises, known as the Weyand Building (saloon, barn and ice-house) and lot and situate," etc.

As we have seen, the present action involves the question of the title to or ownership of another and different portion or part of the Bonanza claim. Thus it is to be observed that the two actions not only do not relate to or involve the same *subject matter* or the same *right,* but the issues submitted for decision in the one action were different from those submitted in the other, since in the one the question of the right of possession was the sole issue, while in the other the question of title to or the ownership of the fee was the main issue.

Section 1911 of the Code of Civil Procedure declares: "That only is deemed to have been adjudged in a former judg-

ment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto.''

It is elementary and, indeed, necessarily true that the force of an estoppel by judgment resides in the judgment itself. It is not, in other words, the finding of the court or the verdict of the jury which concludes the parties, but the judgment entered thereon. (See 23 Cyc. 1218, and cases named in the footnote.)

In *Foster* v. *The Richard Busteed,* 100 Mass. 409, [1 Am. Rep. 125], the rule of *res adjudicata* is stated as follows: ''To be a bar to future proceedings it must appear that the former judgment necessarily involved *the determination of the same fact* to prove or disprove which it is pleaded or introduced in evidence. *It is not enough that the question was one of the issues in the former suit. It must appear to have been precisely determined.*'' (See *Freman* v. *Marshall,* 137 Cal. 159, [69 Pac. 986]; *Ephraim* v. *Pacific Bank,* 136 Cal. 646, [69 Pac. 436]; Freeman on Judgments, secs. 251, 253, 256, 257, 260, 261; *Krutsinger* v. *Brown,* 72 Ind. 468; *Laguna Drain. Dist.* v. *Charles Martin Co.,* 5 Cal. App. 166, [89 Pac. 993].)

In this case, while, as seen, the ownership of the whole of the Bonanza claim premises was made an issue by the pleadings and the court found that the plaintiff was the owner of all of said claim, yet the single and precise matter submitted for determination and which was adjudicated in the former action was as to the right to the possession of a small part only of the premises included within the boundaries of said claim; and it is obvious that the matter so decided is the only one involved in said action as to which the plea of *res adjudicata* may properly be held to operate.

The complaint in the former action was filed on the twenty-ninth day of June, 1908. The plaintiff in the present action did not, if he ever obtained any at all, acquire title to the property in question in this action until the twenty-seventh day of November, 1909, which was over one year after issue had been joined in action No. 3839. None of the predecessors in interest of the defendant herein was made or joined as a party defendant in the former action.

In the very early case of *Valentine* v. *Mahoney,* 37 Cal. 389, 396, Mr. Justice Rhodes, speaking for the court, had this to say of a situation strikingly similar to the one here: ''The

plaintiff claims that this title accrued after the suit of *Mahoney* v. *Wilson* [15 Cal. 42] was determined. But it is not necessary to go to that length, *for if he did not hold the title at the time the issue of fact was joined* in that action, or if acquired intermediate that time and the rendition of the judgment, it was not set up by the supplemental answer, and it was unaffected by the judgment, for the very sufficient reason that it was not involved in the action. It is enough for the plaintiff to show that the alleged newly acquired title was not in issue in the action, without showing that it was acquired after the judgment.''

It is true that the rule is that ''a judgment is conclusive not only as to the subject matter in controversy in the action upon which it is based, but also upon all matters involved in the same *which might have been litigated and decided in the same case.*'' (*Crew* v. *Pratt,* 119 Cal. 139, 149, [51 Pac. 38].) In different words, ''the plea of *res adjudicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.'' But can it be said that, under the precise issues as tendered by the complaint and which were vital to the case, the fact of the asserted ownership by Purcell of another and entirely different and distinct parcel of land included within the Bonanza claim constituted ''a point which properly belonged to the subject of litigation'' in the former action? We think not. The former action, as we have shown, was one in ejectment, in which alone was involved the question of the right to the possession, not of the whole of the premises of the Bonanza claim, but of a fractional part thereof; while the present is a suit to quiet title, in which the question of the ownership of the fee in another and different fractional portion of the lands of said claim is involved. There could obviously be no inconsistency in the wrongful withholding from the power company by Purcell of the possession of a certain portion of its lands and the existence in Purcell of an impregnable title to the fee in another portion of the same lands. Had the judgment in the former action passed in favor of Purcell, most certainly he could not thereafter have claimed that the adjudication had established in him anything

more than the right to the possession of the particular premises within the boundaries of the Bonanza claim known as the "Weyand Buildings and lot." He could not have used the judgment as the foundation of a claim to the possession of other portions of the Bonanza lands, and thus, if the defendant's contention here were sound, there would be wanting that mutuality in operation which is one of the essential characteristics of estoppel by judgment.   (23 Cyc. 1238.)

2. The next point made by the defendant is that Purcell failed to show, as, under ordinary circumstances, it would be incumbent upon him to do, that he was a purchaser of the property involved herein in good faith and without notice, actual or constructive, of the purported conveyance by one A. L. Fletcher, one of the original locators and subsequent patentees of the Bonanza claim, of his interest in said claim and premises to his wife, Gertrude Irene Fletcher, prior to the conveyance by all three of such locators and patentees of the parcel of land in dispute herein to the plaintiff's grantor, Paul Friedman.

The record shows: That the property in question was, on the tenth day of January, 1901, by a deed of conveyance quitclaimed by W. J. Thurman and Charles McGraw to Paul Friedman. Said deed recited that the premises thereby conveyed, which included a building in which the saloon business had been carried on, were "the same heretofore acquired by Charles McGraw, one of the parties of the first part herein, from J. F. Shelton by a deed bearing date June 7th, 1897," which deed was duly recorded. On the nineteenth day of November, 1901, Andrew L. Fletcher conveyed by deed the lands and premises known as the Bonanza quartz mine to Gertrude Irene Fletcher, the property so conveyed being all of the lands and premises of the Bonanza mining claim. This deed was recorded on the ninth day of August, 1904. On the twenty-fifth day of November, 1901, Thurman and McGraw, above mentioned, executed and delivered to said Paul Friedman a warranty deed to the property in dispute, said deed having been recorded on the tenth day of December, 1901. On the twenty-eighth day of February, 1904, E. P. Sherk, Frank T. Large, and Andrew Fletcher, by deed, conveyed to Paul Friedman the property in controversy, said deed having been recorded on the third day of March, 1904. On the thirteenth day of February, 1909, the general government issued to

E. P. Sherk, Frank T. Large, and Andrew Fletcher (original locators thereof), a patent to the lands and premises of the Bonanza mining claim, which patent included the property here in controversy. This patent was recorded on the twenty-sixth day of February, 1909. By deed dated October 4, 1907, Fletcher, Large, and Sherk conveyed all the land and premises described in the said patent to the defendant in this action, the said instrument of conveyance having been recorded on the eighteenth day of October, 1907. On August 18, 1909, Gertrude Fletcher, wife of Andrew L. Fletcher, conveyed by deed to the defendant herein whatever interest she acquired in the lands and premises of the Bonanza Mining claim by virtue of the deed from her husband, Andrew Fletcher, to her, bearing date November 19, 1901.

It will be observed that the paramount source of the title to the land in dispute was in the general government, directly from which Sherk, Large, and Fletcher obtained title. The deeds from Thurman and McGraw to Paul Friedman, having been made prior to the issuance of the patent by the government to the parties therein named as patentees, are, therefore, without any force so far as is concerned the deraignment of title to the property in question to Purcell.

It will further be observed that the deed from Andrew Fletcher to his wife, Gertrude, conveyed the grantor's one-third interest in the properties of the Bonanza mining claim which, it will be kept in mind, included the parcel of land in dispute. It will also be noted that the last mentioned deed was executed on the nineteenth day of November, 1901, or approximately two years and three months prior to the execution by Sherk, Large, and Fletcher (who, as we have shown, subsequently became the patentees of the government of all the lands of the Bonanza claim) of the deed purporting to convey the parcel of land in question to Paul Friedman, the grantor of the plaintiff. The said deed to Friedman, however (it will be observed), was recorded in the office of the county recorder of Shasta County approximately five months prior to like recordation of the deed to Gertrude Fletcher from Andrew Fletcher.

Friedman's deed to the plaintiff herein was executed and delivered on the twenty-seventh day of November, 1909, at and previous to which time, it will be borne in mind, the deed

29 Cal. App.—33

from Fletcher to his wife was on record in the recorder's office.

Neither the deed from Andrew Fletcher to his wife nor the deed from Fletcher, Large, and Sherk to the defendant herein reserved or excepted from its operation any of the lands and premises included within the boundaries of the Bonanza claim of the lands patented to Fletcher, Large, and Sherk by the government.

We are familiar with the rule laid down in the cases, notably the case of *Bell* v. *Pleasant,* 145 Cal. 412, [104 Am. St. Rep. 61, 78 Pac. 957], that "where one holding under an unrecorded deed brings an action involving the respective titles to the land against a subsequent grantee under a deed which is first recorded, the first grantee will prevail, unless the second grantee not only shows the making and recording of his deed, but also that he made his purchase and paid the price in good faith, and without the knowledge of the rights of the previous grantee." (See, also, *Colton* v. *Seavey,* 22 Cal. 497, 504; *Long* v. *Dollarhide,* 24 Cal. 218; *Mahoney* v. *Middleton,* 41 Cal. 41; *Eversdon* v. *Mayhew,* 65 Cal. 167, [3 Pac. 641]; *Wilhoit* v. *Lyons,* 98 Cal. 409, [33 Pac. 325]; *Beattie* v. *Crewdson,* 124 Cal. 577, [57 Pac. 463].)

Under the rule above stated, the burden, under ordinary circumstances, would rest upon the plaintiff to show, if he could, that he received his deed to the disputed parcel of land without knowledge or notice of the pre-existing legal title of Mrs. Fletcher thereto. The deed of the latter, however, was a stranger to the record until after the plaintiff rested his case, it having been introduced in evidence by the defendant as a part, and, indeed, the mainstay, of its defense against the claim of the plaintiff. It then for the first time became necessary for the plaintiff to attempt to overcome the effect of the prior deed of Mrs. Fletcher, and this obviously could be done, if at all, by way of rebuttal only. In other words, the plaintiff could not know, when he filed his complaint, that the defendant would answer, nor that, if it did, it would claim under the deed from Fletcher to his wife. (*Baker* v. *Baker,* 9 Cal. App. 737, 740, [100 Pac. 892], and authorities therein referred to.) It was therefore the duty of the defendant to prove the deed from Fletcher to his wife, if it intended to rely upon that instrument, and not upon the plaintiff to anticipate it and undertake to overcome its effect in his original case. And meeting this duty, and so put-

ting in its case, the defendant itself brought to light several considerations which give to the transactions concerning the land in dispute, in so far as they involved the dealings of Fletcher and his wife, a decided color of bad faith—so much so, indeed, as to lead to the conclusion that the burden of showing, if it could be done, good faith in said transactions should justly have been cast upon the defendant, to be by it satisfactorily discharged, before the plaintiff should have been required or called upon to make an attempt to show that ` he took his deed without notice, actual or constructive, of the asserted prior legal right of Mrs. Fletcher to the land in question.

The plain facts of this case are these: That Fletcher is, anu was, at the time of the trial of this action, the manager, the vice-president, and a holder of a large block of the stock of the plaintiff; that the conveyance by him of the land in dispute to his wife, while given for a *good* consideration, was not supported by a *valuable* consideration; that the conveyance by him to Friedman of said land after having conveyed it ⁺᠈ his wife constituted not only a fraudulent act, but qne that is denounced by our law as a crime, punishable as a felony (Pen. Code, sec. 533); that the neglect of Mrs. Fletcher to record her deed within a reasonable time after she received it enabled him to commit said fraud; that the deed from Mrs. Fletcher to the Victor Power Company, according to its face, was supported by a nominal consideration only (the sum of one dollar), and, moreover, was not made until approximately two years and ten months after Fletcher, Sherk, and Large conveyed by deed to said company all their respective interests in all the lands and premises of the Bonanza claim; that the defendant herein took the conveyance from Fletcher, Large, and Sherk, as likewise they took the deed from Mrs. Fletcher, with at least constructive notice of the prior deed from Friedman to the plaintiff.

Besides the foregoing considerations, Fletcher, while upon the witness-stand, admitted the execution and delivery by him and his co-owners of the Bonanza claim lands of the deed conveying to Friedman the parcel of land in dispute, and during the course of his testimony made no claim that said conveyance was not made in good faith and for a valuable consideration.    Indeed, his testimony clearly shows that, after the deed to Friedman, neither he and his associates nor the

Victor Power Company ever exercised any acts of ownership over the so-called Friedman property. While he said he *thought* that the defendant was the owner of the property, he admitted that at no time did the company ever collect rent from the tenants thereof, and, in fact, neither he nor the defendant knew upon whose authority tenants occupied the building. It is true that Fletcher, acting for the defendant after the building became vacant, directed one of the employees of the company to take charge of the building, for no other purpose, however, as declared by Fletcher, than to prevent it from catching fire, the danger of which seemed to be probable from the fact that it was often made a place of refuge by stragglers and men in an intoxicated condition. His principal reason for thus exercising surveillance over the property, he said, was to prevent a conflagration or the destruction by fire of other property in the town of Harrison Gulch (of the bulk of which the company was the owner), a result which would likely follow from the burning of the Friedman Building because of its central location in the town.

Now, as to the deed from Fletcher to his wife and the conveyance from Fletcher, Sherk, and Large to the power company, either one or the other of two conclusions necessarily follows therefrom: 1. That the deed from Fletcher to his wife was not understood or intended by them to operate as a *bona fide* transfer of Fletcher's interest in the lands; or, 2. That Fletcher, when joining Sherk and Large in the deed to defendant, said transfer having been executed subsequently to the making of the deed to Mrs. Fletcher, committed a fraud on the power company, and, as in the case of the deed to Friedman, violated the provisions of section 533 of the Penal Code, *supra*. The first stated hypothesis is the more reasonable, perhaps, in view of Fletcher's peculiar position with reference to this action. In this connection, it is to be observed that, while the action here is against the Victor Power Company, a corporation, it is obvious that a judgment in its favor would inure greatly to the benefit of Fletcher, since he was not only manager of, but a large stockholder in, the defendant at the time of the trial of this action. And it may parenthetically well be observed that Fletcher, as such manager and stockholder, if not strictly in a legal aspect, was, nevertheless, most certainly in substantial effect, in this action, in the very unenviable position of one who attempts to bolster up his own

title to property by and upon his own fraudulent act, or, in other words, attempts to establish that his own deed is void because it was made and delivered in fraud of the rights of his prior grantee.

However, as before stated, all the foregoing facts and considerations were brought out by the defendant itself in attempting to support its claim of ownership of the property in controversy, and were, in our opinion, sufficient to indicate the bad faith of the transaction on which the defendant has planted its resistance to the plaintiff's claim of ownership and to call for a satisfactory explanation thereof, if one may be given. In other words, we believe that, in equity and good conscience, it was a duty incumbent upon the defendant to make such an explanation before the plaintiff should have been called upon to show that he had taken his deed without notice of a prior deed which the facts and circumstances brought out by the defendant itself tend strongly to show was not made and given in good faith and for a valuable consideration.

But, as stated, the judgment must be reversed because of the insufficiency of the evidence to support the finding of special damage.

The court found that, by reason of the ouster of and the wrongful detention of the property in controversy from the plaintiff, the latter was damaged in the sum of five hundred dollars. The court further found that the plaintiff, after having been ejected from the Weyand Building by the defendant, was, by reason of the withholding by the defendant of the possession of the Friedman Building, prevented from engaging in the saloon business in Harrison Gulch, there being no other building in said town suitable for such a business; that the saloon business theretofore conducted by the plaintiff had returned him a profit of $150 per month, and that said business and profits had been totally destroyed by the said wrongful act of the defendant, and that by reason thereof the plaintiff had been further damaged in the sum of five hundred dollars.

As to special damage, the court found as follows:

"That plaintiff from the 15th day of December, 1909, to the time of the commencement of said action, had been continuously engaged in the conducting of the saloon business in that certain building in the town of Harrison Gulch, county

of Shasta, state of California, commonly known as and called
the 'Weyand Building.' That during all of said times the
said Weyand Building was too small for the proper handling
of the said saloon business of the plaintiff. That there is
situated on the property described in paragraph I of these
Findings, a building known as the 'Friedman Building,' which
building was of sufficient size to accommodate the said saloon
business of plaintiff. That during said time there was no
other building in said town of Harrison Gulch which plaintiff
during any of said times was able to secure, or could secure,
that was suitable for the transaction of his said saloon busi-
ness. That by reason of the withholding of the possession of
the said Friedman Building from plaintiff, plaintiff has been
specially damaged in this, that he was during said time
greatly restricted in the volume of business which he other-
wise would have been able to do and was and has been de-
prived of a large revenue which he would have otherwise
received if he had been permitted to use and occupy said
Friedman Building for saloon purposes during said time, by
reason whereof he had been specially damaged in the sum of
$3,000.00.''

Although the language of the foregoing finding, ''that plain-
tiff from the fifteenth day of December, 1909, to the time of
the commencement of *said action,*'' etc., is rather ambiguous,
still it seems clear enough that the words ''the said action''
mean the present action, since no other action is previously
mentioned in the findings. There is a further ambiguity in
the language of the finding in that this action was *commenced*
on the first day of February, 1910, while the amended and
supplemental complaints were filed on November 4, 1910.
The supplemental complaint set up the claim for the special
damages found in the quoted finding. If the finding refers
to the time at which the action was actually commenced (Feb-
ruary 1, 1910), then the special damages allowed by the court
covered only the period from December 15, 1909, to February
1, 1910, or a period of forty-seven days. If, as perhaps is
true, it referred to the period from the fifteenth day of
December, 1909, to the date of the filing of the supplemental
complaint, then the damages therein awarded cover a period
of a trifle over eleven months.

But, in either case, the damage claimed to have been suf-
fered by the plaintiff in the particular referred to is entirely

too remote and speculative to uphold a finding of special damages on that score in the enormous sum of three thousand dollars. The evidence does not establish a substantial criterion by which special damages by reason of the wrongful withholding of the property from the plaintiff may be approximately estimated. In such cases as this, the plaintiff's right to recover for such a loss as is involved in the finding under consideration depends on his proving with sufficient certainty that the advantages he claims would have resulted had the acts of the defendant complained of by him not been committed.

The award of special damages is founded upon the hypothesis, which is presented by the supplemental complaint, that, inasmuch as the Friedman Building was of larger dimensions or more capacious than the Weyand Building, the volume of the plaintiff's business would have been greatly increased, with a corresponding increase in profits therefrom, had the plaintiff not been wrongfully deprived by the defendant of the possession of the former building and he thus enabled to occupy and use said building for the purposes of the saloon business.

There is no necessity for reviewing at length in this opinion the testimony offered and received in support of that proposition and upon which the trial court predicated the above-quoted finding. Most of whatever proof there is in the record upon this question of special damages came from the testimony of the plaintiff himself. He testified that, during the period of time that the possession of the Friedman Building was withheld from him by the defendant, and while he was still occupying the Weyand Building, and during the last six months of his occupancy of said building, his receipts for sales of liquor amounted to an average of $48 per day, of which $18 represented profits. He remained in possession of the Weyand Building until the thirtieth day of October, 1910, or down to four days before his supplemental complaint was filed. Accepting his statement that his net earnings during the period mentioned amounted to $18 per day, it, of course, follows that his loss, by reason of being deprived of the occupancy and use of the Friedman Building, would be the difference between the amount so earned and any sum in excess of said amount which he might show with sufficient certainty that he would have earned as profits had he, during

that time, occupied and used said building for the purposes of the business in which he was engaged. The record does not disclose that this difference has been ascertained or even approximately so. There is testimony by the plaintiff and another witness testifying in his behalf that the plaintiff's saloon in the Weyand Building was generally crowded for room because of the large number of frequenters thereto, and that the saloon was not of sufficient dimensions to hold the number of card tables necessary to accommodate such of the plaintiff's customers as desired to play at cards for drinks. The plaintiff appears to have regarded the lack of room for additional tables as constituting the principal drawback of the Weyand Building to his business; but it was not shown, nor was there any attempt at showing, how much business was turned in by the card games to the plaintiff, nor is it satisfactorily made to appear that he would have actually sold more liquor had he been able to add to his establishment a sufficient number of card tables to have accommodated all his customers desiring to play at cards. For aught that appears to the contrary from the record, those of his customers having a predilection for card-playing who were deprived of the opportunity of indulging in that pastime because of lack of facilities in that respect might have patronized the plaintiff's bar to an extent equal to that which they would have done had they been engaged in card-playing. At any rate, as before declared, there is no satisfactory showing that the plaintiff suffered the loss of any business by reason of the comparatively restricted dimensions of the Weyand Building. The most that can be said of all the testimony presented by the plaintiff upon this element of special damage is that he did a profit-producing business while he occupied the Weyand Building. Clearly, this is not sufficient warrant for a finding that he would have done a greater amount of business and as a consequence derived larger profits had he been allowed the occupancy and use of the Friedman Building for the purposes of his business.

The judgment is reversed.

Chipman, P. J., and Burnett, J., concurred.