## THE PEOPLE OF THE STATE OF CALIFORNIA *v.* JOHN S. LOVE, J. E. GALLOWAY, WM. A. BOLINGER, W. P. WEAKS, W. P. ELLIS, AND F. L. AUD.

SUIT ON COLLECTOR'S BOND.—The District Attorney of a county has the authority, of his own volition, with or without instructions from the Controller of State, County Court, or the Board of Supervisors of a county, to bring an action upon the official bond of the Tax Collector of a county.

SAME.—All the money due on a Tax Collector's bond may be recovered in a single

People v. Love et als.

action in the name of The People of the State, although part of the money thus due may belong to the county and part to the State.

PARTIES DEFENDANT.—It is no misjoinder of parties defendant for the plaintiff to sue one, or any number more than one, of all the persons severally liable upon the same obligation or instrument.

COMPLAINT.—A complaint, in an action on the bond given by a Tax Collector as Collector of Taxes of Yuba County, is not ambiguous and uncertain because it does not aver that any of the money sued for was collected by the Tax Collector on account of foreign miners' licenses.

TAX COLLECTOR'S BOND.—An Act of the Legislature which makes the Sheriff of a county its Tax Collector, and also makes the Sheriff and his bondsmen responsible for the payment of all taxes collected by him, has the effect of making the bond of the Sheriff his bond as Tax Collector.

COMPLAINT.—The complaint in an action on a Tax Collector's bond need not aver that the taxes charged on the assessment roll were legally assessed.

TAX COLLECTOR'S BOND. — A Tax Collector's bond, in which the principal and sureties bind themselves in the sum of fifty thousand dollars, "to be paid to the State of California in the following manner and proportion," followed by a specification of the several amounts for which each surety respectively binds himself, the aggregate amounting to the sum of fifty thousand dollars, without any specification of the amount for which the principal is bound, is valid, both against the principal and his sureties.

JOINT AND SEVERAL BOND.—A bond running thus : "for which sums respectively, unto the said State of California, in the manner and in the proportions hereinbefore set forth, we bind ourselves, our and each of our heirs, executors, and administrators, jointly and severally, firmly by these presents," is a joint and several bond.

FORM OF JUDGMENT ON OFFICIAL BOND. — A judgment rendered in an action against the sureties on an official bond, who sign for different amounts respectively, may be entered up against each surety for the amount for which he is liable on the bond, and all the costs, with a direction that plaintiff have execution on the judgment, but that no more shall be collected than the sum (mentioning the same) found to be due from the principal.

APPEAL from the District Court, Tenth Judicial District, Yuba County.

The judgment in this case, after reciting the amount found due from the principal, which was thirty-one thousand and forty-eight dollars, reads as follows :

"It is, therefore, by the Court ordered and adjudged, that the plaintiff in this action have judgment against the said J. E. Galloway, and judgment is hereby ordered in favor of the plaintiff, against the said Galloway in this action, for the sum of fifteen thousand dollars, ($15,000,) and all the plaintiff's costs in this behalf expended, taxed at $101 45."

Separate judgments, in same form, following each other,

66

were rendered against each surety for the amount for which he was liable on the bond.

The judgments were followed by the following direction:

"And it is further ordered and adjudged, that the plaintiff have execution on the above judgments, but that no more shall be collected thereon than the aforesaid sum of $31,048, with accruing interest, and the costs of suit, and accruing costs."

John S. Love was the principal on the bond, but was not served with process. The sureties alone appeared and defended. Bolinger and Ellis alone appealed.

The other facts are stated in the opinion of the Court.

*Chas. E. Filkins*, for Appellants.

The Court below erred in overruling demurrer of defendants upon the first and second points. (*People* v. *Lattimore*, 19 Cal. 365; *Wolverton* v. *Commonwealth*, 7 Sergt. & Rawle, 273; *Montgomery* v. *Commonwealth*, 1 Monroe, Ky. 197; Practice Act, Secs. 4 and 12.)

The Court erred in overruling the fifth point in the demurrer. (*Whitfield* v. *Woodbridge*, 23d Miss., 1st Cushman, 183; *Evans* v. *State*, 2d Blackford, 388.)

The bond sued upon is not a bond required by law; is voluntary and not binding upon the sureties, and the Court erred in overruling the sixth point in the demurrer. (*State* v. *Bartlett*, 30th Miss., 1st George, 624; Statutes of 1851, page 190; Act of April 20th, 1851; Act of May 1st, 1851, pp. 153 and 158, Sec. 1; Statutes of 1854, p. 110, Sec. 92; Statutes of 1855, p. 164; *Stevens et al.* v. *Ira Hays et al.*, 6th Cushing, 229; *People* v. *Cabaness*, 20 Cal. 525.)

The Court erred in entering judgment against the sureties without proceeding to judgment against the principal; there being no obligation on the part of the principal. (*People* v. *Hartley*, 21 Cal. 585; *Sacramento* v. *Dunlap*, 14 Cal. 421.)

*George Rowe*, and *J. O. Goodwin*, for Respondent.

By the Court, SANDERSON, C. J.

This is an action brought by the District Attorney of Yuba County, in the name of The People of the State of California, upon the official bond of the Tax Collector of that county to recover a certain amount of taxes, part belonging to the State and part to the county, alleged to have been collected by the Tax Collector and not paid over by him to the County Treasurer, as required by law. The defendants demurred to the complaint upon several grounds, which will be noticed in their order.

1. The objection to the effect that this action should have been brought by the Attorney-General instead of the District Attorney, is not well taken. The thirty-sixth section of the Revenue Act of the 17th of May, 1861, (Statutes of 1861, p. 431,) provides that: "If any Tax Collector shall refuse for a period of five days, or wilfully neglect to make the payments and settlements with the Treasurer and Auditor of his county, as in this Act specified, he and his sureties shall be held liable to pay the full amount of taxes charged upon the assessment roll; and the District Attorney, of his own volition, or on being instructed to do so by the Controller of State, or by the County Court or Board of Supervisors of the county, shall cause suit to be brought against such Tax Collector and his sureties for the full amount due on the Auditor's books. And if any such suit is commenced, no credit or allowance whatever shall be made to such refusing or neglecting Tax Collector for the delinquent taxes outstanding." Under this section there can be no question but that the District Attorney had full power and authority to bring this action. The terms of the Act are plain and explicit, leaving no room for construction. Upon the happening of the contingency named at the commencement of the section, it is imperatively made his duty to bring the suit " of his own volition." Whether the money sued for may belong to the State or county, or part to the former and part to the latter, or whether one suit is sufficient, or separate suits are necessary where the money belongs in

part to the State and in part to the county, is of no moment so far as the question of power is concerned, for, in either event, the suit or suits are to be brought by the District Attorney, and he may bring them with or without instructions to that effect.

2. The second and fourth grounds of demurrer are to the effect that the money or taxes sued for, being in part due to the State and in part due to the county, cannot be recovered in a single action, in the name of The People of the State, and that separate suits are necessary—one in behalf of the State and the other in behalf of the county.

In considering this question, counsel for appellants turn aside from the statute, and argue from the principles of the common law, for the purpose of establishing the alleged misjoinder. But, in our judgment, the question finds a ready solution in the provisions of the Revenue Act, and no resort to common law principles is made necessary. The Tax Collector does not report to or account with any State officer for the taxes collected by him. It is his duty, upon receiving the duplicate assessment roll, to collect the taxes therein charged against the taxpayers of his county; and it is his duty, on the first Monday of each month, to pay to the County Treasurer all money in his hands belonging to or collected for the use of the State or county, and take his receipt therefor, and on the same day deliver the same, together with a true and correct account, under oath, of all his transactions since his last settlement to the County Auditor; and on the first Monday in December of each year it is made his duty to attend at the County Auditor's office, with his duplicate assessment roll, and make with the County Auditor a final settlement touching all the taxes charged against him on account of such assessment roll. If he fails to do all this he and his sureties become liable, upon his official bond, to pay the full amount of all taxes charged against him on account of said assessment roll, without any credit for outstanding delinquent taxes—said amount to be recovered by suit upon his bond. Thus the Tax Collector neither accounts to nor pays over any money to any

State officer, nor has he any duty to perform in regard to the apportionment of the money collected by him as between the State and county. His account is kept with the county, and with her he deals and settles. His whole duty is performed when he has collected the money charged in the assessment roll and paid the same to the County Treasurer and made his settlements with the County Auditor. There his duty and liability, and that of his sureties, cease. To whom the money belongs is no concern of his or of his sureties. So far as his duty and liability and that of his sureties are concerned, the money is but one fund, to be collected and paid over to a single individual. Its distribution thereafter is controlled in no way by him or them; nor is he or they in any manner responsible therefor. By their bond he and his sureties have bound themselves to the obligee in the bond to the effect that he will collect and pay over all the money charged in the assessment roll to the County Treasurer, or in default thereof he shall make good the deficit. So far as his duty, and his and their liability is concerned, the money belongs to the obligee named in the bond, and they have no legal right or license to look beyond the bond for the purpose of seeing where the money goes, nor need they be at all anxious whether the right party gets it. That duty the law has not imposed upon them. When they have watched its course until it has reached the hands of the County Treasurer their supervision is no further required. As to them the money constitutes but one fund, to wit: the public revenue, and belongs to but one owner, to wit: the public, and has but one custodian, to wit: the County Treasurer. When there is a defalcation, such defalcation is measured by the difference between the total amount charged against the Collector in the Auditor's books, and the amount paid to the Treasurer by him. For the purpose of a suit upon his bond, such deficit constitutes but one sum, and may be declared for without designating the State's or county's portion. The statute manifestly contemplates but one suit, to be brought by the District Attorney in the name of the obligee named in the bond. It speaks in the

singular number, and provides, without limitation, that the full amount found due on the Auditor's books may be recovered in that suit. Nor does this impose any hardship upon the Tax Collector or his sureties; on the contrary, it enables them to determine in one suit what otherwise would require two. Nor is there any technical difficulty, as we have already seen, in determining the whole controversy in one action. Where this can be done, the policy of the law requires that it should be done. It follows that the record presents no case of misjoinder.

3. The next ground of demurrer is to the effect that there is a misjoinder of parties defendant, because J. G. Eshom, one of the sureties upon the bond, is not made a party.

The bond upon which the suit is brought, as will more fully appear hereafter, is joint and several. The fifteenth section of the Practice Act provides that "persons severally liable upon the same obligation or instrument * * * may all, or any of them, be included in the same action, at the option of the plaintiff." This section changes the common law rule, that one or all, and not any intermediate number, may be sued. Under this section a plaintiff may, at his election, sue one or more, or all the persons severally liable upon the same obligation or instrument.

4. It is next claimed that the complaint is ambiguous and uncertain because it does not designate what portion, if any, of the money sued for was collected by the Tax Collector on account of foreign miners' licenses, for which amount, if any, the sureties upon the bond in suit were not liable.

There is no averment in the complaint showing that any of the money sued for was collected by the Tax Collector on account of foreign miners' licenses, nor is there any averment from which it can be inferred that any money realized from that source constitutes a part of the amount for which judgment is asked. It is true that under the law relating to the Tax Collector of Yuba County (Statutes of 1855, p. 164) he is required to give the same bonds which were theretofore required of the Sheriff in his capacity of ex officio Tax Col-

lector. Of the Sheriff (as will hereafter more fully appear) the law required two bonds—one for fifty thousand dollars as Collector of Taxes, and one for fifteen thousand dollars as Collector of Foreign Miners' Licenses. The former bond is the one sued on, and upon that bond neither the Tax Collector nor his sureties could be made liable for any defalcation for money collected on account of foreign miners' licenses. In suing upon this bond the plaintiff alleges in substance that the Tax Collector had collected a certain amount of money belonging to the State and county which he failed and refused to pay over according to law, and that in consequence of such failure he and his sureties have become liable for that amount upon the bond in suit. This was sufficient in our judgment, and it was not necessary to insert a negative allegation to the effect that no part of the money sued for was derived from foreign miners' licenses. The particular source or sources from which the Tax Collector obtained the money was matter of proof rather than allegation. In any event it is clear that there is no such ambiguity in the complaint as would justify us in disturbing the judgment on that ground. No recovery was had on account of money derived from foreign miners' licenses, and we do not think the defendants have been in any manner prejudiced by any real or supposed ambiguity in the complaint.

5. It is next claimed that the complaint does not state facts sufficient to constitute a cause of action; first, because the bond sued on is not a bond required by law, but is a mere voluntary bond, and therefore not binding upon the defendants; second, because there is no averment that the taxes were legally assessed by the proper officers. These positions the learned counsel for appellant has also failed, in our judgment, to maintain.

Prior to the first day of May, 1851, taxes were collected by the County Treasurer. From that time until the office of Tax Collector was created in Yuba County (April 27, 1855) the taxes were collected by the Sheriff. By the Act of the 27th of April, 1851, (Compiled Laws, 711) the Sheriff of Yuba County was required to give a bond in the sum of fifty thou-

sand dollars for the faithful performance of the duties pertaining to his office as Sheriff. By the Act of the 30th of March, 1853, (Compiled Laws, 219) the Sheriff was required to give a bond in the sum of fifteen thousand dollars for the faithful performance of his duties as Collector of the foreign miners' license tax. By the Revenue Act of 1854, section ninety-two (Statutes of 1854, p. 110,) the Sheriff and his bondsmen were made responsible for the payment of all taxes collected by him. By the Act of 1855, (Statutes of 1855, p. 164,) separating the office of Tax Collector from that of Sheriff in Yuba County, the Tax Collector is required to give such bond or bonds as were then required by law to be given by the Sheriff as Tax Collector.

It is claimed by counsel for the appellants that under the statutes above cited the Sheriff was never required to give any bond as Tax Collector, except the bond for fifteen thousand dollars for the performance of his duty as Collector of the foreign miners' license tax, and hence that the Tax Collector is not required by law to give any bond except the bond for fifteen thousand dollars. Such is not the proper construction. By declaring that the Sheriff and his bondsmen should be responsible for all taxes collected by him, the Legislature in effect declared that his bond as Sheriff should be his bond as Tax Collector. The same individual was vested with two offices, but for the sake of convenience he was required to give but one bond. That bond pertained no more to one office than it did to the other, but pertained equally to both. It was his bond as Sheriff and his bond as Tax Collector, and when he gave it he gave it as Tax Collector as well as Sheriff. Such being the case, the law of 1855 requiring the Tax Collector to give the same bonds which had been previously required of the Sheriff made it obligatory upon him to give two bonds— one in the sum of fifty thousand dollars and the other in the sum of fifteen thousand dollars. Pursuant to this requirement of the statute the bond in suit was given, and the same, so far as the question under consideration is concerned, is binding and obligatory upon the principal and his sureties.

Nor do we think it was necessary to aver that the taxes charged upon the assessment roll were legally assessed. The statute provides that, upon the happening of the contingency named, the principal and his sureties shall be liable to pay the full amount of the taxes charged upon the assessment roll. Thus the assessment roll is made the measure of their liability, regardless of the fact as to whether the taxes there charged have been collected. It was the intention of the Legislature to relieve the State from the burden of proving the legality of the assessment, or the collection of the taxes, and make the Auditor's books the measure and the evidence of the liability. This is made more manifest by the clause which forbids any credit or allowance for delinquent taxes outstanding and uncollected. The sufficiency of the complaint is to be determined by a reference to the provisions of the statute under which the suit is brought, and not by a resort to the principles of the common law, to which our attention is invited by the counsel for the appellants. Tested by those provisions, the complaint is not, in our judgment, obnoxious to the objection under consideration.

6. It is next claimed that the principal, by reason of the peculiar phraseology of the bond, is not bound thereby, notwithstanding he has signed it, and that, therefore, his sureties are not.

The principal and his sureties all sign the bond and bind themselves in the sum of fifty thousand dollars, "to be paid to the State of California in the following manner and proportion;" then follows a specification of the several amounts for which each surety respectively binds himself, the aggregate amounting to the sum of fifty thousand dollars, without any specification as to the amount for which the principal is bound, and it is argued by counsel for the appellants that by reason of the absence of any specification as to the principal, he is not bound. By this process of reasoning the learned counsel for the appellant substitutes the exception for the rule. The specifications are limitations upon the general clause which precedes. Strike them from the bond and the principal and

67

sureties are all bound in the sum of fifty thousand dollars. Insert them and the liability of the sureties is reduced to the amounts respectively specified, but the principal, not being named in the exception, is wholly unaffected thereby and stands as before bound for the full amount of fifty thousand dollars.

7. It is next claimed that the bond in suit is a joint bond only and not joint and several, and upon that hypothesis, several other points are made, which, in view of the conclusion we have arrived at upon the first, it is unnecessary to notice in detail. The language which characterizes the liability of the obligors is as follows : " For which sums respectively, unto the said State of California, in the manner and in the proportion hereinbefore set forth, we bind ourselves, our and each of our heirs, executors and administrators, jointly and severally, firmly by these presents." If, by the use of words, a joint and several liability can be created, it would seem that it has been done in this instance. We certainly know of no words more apt to express that idea than those used. They have been long used for that purpose, and we are not aware that they have lost their force and vigor. In this connection our attention is called to the case of *Sacramento* v. *Dunlap*, 14 Cal. 421, and the case of *The People* v. *Hartley*, 21 Cal. 585. The first case, as reported, does not contain a copy of the bond sued on. In the opinion of the Court it is declared to be a joint, and not a joint and several bond ; but as a copy of the bond is not given, that case throws no light upon the question under consideration. In *The People* v. *Hartley*, a copy of the bond was given, and the words "joint and several" were not used. The word "severally" was used, which the Court read as applying only to the various sums for which the sureties bound themselves, and not as giving legal character to their liability. The language used was less explicit than that found in the present case, and the conclusion to which the Court arrived in that case cannot be regarded as establishing a rule for the decision of this, where the language is too clear and precise to afford any room for construction.

The objection to the form of the judgment is not well taken. It is in conformity with the rule of the common law, and we are not aware that that rule has been disturbed by statute.

Judgment affirmed.