[No. 11785.    Department One. — August 30, 1887.]

## ROSA H. HEPPE, RESPONDENT, *v.* H. W. JOHNSON ET AL., APPELLANTS. ·

DEPOSIT BY CLERK OF COURT — DUTY OF TREASURER TO RECEIVE — ACT OF 1864 — REPEAL OF BY CODES. — The act of 1864, requiring the clerks of courts of records, in all cases in which deposits of money are made into court, to deposit the same with the treasurer of the county, and making it the duty of the treasurer to receive such deposits, was not repealed upon the taking effect of the codes on the 1st of January, 1873, nor until the adoption, in 1874, of section 2104 of the Code of Civil Procedure.

ID.— IRREGULARITY IN MANNER OF DEPOSIT — LIABILITY OF SURETIES. — Where a deposit is made by the clerk and receipted for by the treasurer, as required by the act of 1864, and the latter regularly turns it over to his successor in office, by whom it is embezzled, any irregularity that there may have been in the manner of making the original deposit will not release the sureties on the official bond of the succeeding treasurer from liability.

ID. — JOINT AND SEVERAL BOND — JOINDER OF PARTIES IN ACTION ON. — Under section 383 of the Code of Civil Procedure, one or more of the sureties jointly and severally liable on an official bond may be joined as defendants in an action on the bond, at the election of the plaintiff.

ID. — COUNTY TREASURER — SUCCESSIVE TERMS — LIABILITY FOR MISAPPROPRIATION OF FUNDS — SURETIES ON LAST BOND. — Where the same person is elected and acts as county treasurer during three successive terms, and it is afterwards discovered that money deposited with him had been misappropriated, it will be presumed, in the absence of evidence to the contrary, that this misappropriation took place at the end of his last term, and the sureties on his last official bond are liable therefor.

ID. — FORM OF JUDGMENT AGAINST SURETIES. — *People* v. *Love*, 25 Cal. 520, and *People* v. *Rooney*, 29 Cal. 643, affirmed to the point that a judgment against the sureties on an official bond, for a defalcation of the principal, should first fix the amount of the defalcation, and then proceed with a separate judgment against each of the sureties for the full amount for which he made himself liable in the bond, and costs, and then close with a proviso that the judgment shall be satisfied by the collection or payment of the amount of the defalcation and costs.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Freeman, Johnson & Bates,* for Appellants.

*Taylor & Holl,* for Respondent.

BELCHER, C. C. — On the twenty-first day of February, 1873, a decree of foreclosure was entered in the District Court in and for Sacramento County, in favor of Nicholas Schadt against William Nicholas Heppe, administrator of the estate of Jacob Heppe, deceased, and others. This decree, among other things, provided: —

"That if there be any surplus after the payment of the moneys due plaintiff, with interest, attorneys' fees, costs, and accruing costs, that such surplus be paid into court, to be disposed of under the order of the court to the persons entitled thereto."

In pursuance of the decree, the sheriff sold the mortgaged property, and after paying the plaintiff and all costs as required, had left in his hands a surplus of $1,178.85, which he paid to Lauren Upson, clerk of the court, on the twenty-first day of March, 1873.

Immediately on receiving the money, Upson deposited the same with John Bellmer, then the county treasurer, and took from him a receipt, which, after reciting the title of the court and cause, reads as follows: —

"Received, Sacramento, March 21, A. D. 1873, of Lauren Upson, clerk of the court aforesaid, the sum of $1,178.85 in gold coin, paid into court in the above-entitled action, to be kept by me as a special deposit, subject to the order of court.

"JOHN BELLMER, County Treasurer."

On the 18th of June of the same year, an order of court was made, which, among other things, declared the plaintiff here entitled to $589.42, one half of the money paid into court by the sheriff, and directed that such sum be paid by the clerk of the court to the lawful guardian of plaintiff.

The other half of the money was paid out, on the order of the court, to the parties entitled thereto, but the plaintiff's share was kept by Bellmer in a sack, with a tag on it, on which was written the amount of money and the name of the case to which it belonged, until March 6, 1876, when his term of office expired. On that day he turned it over to D. E. Callahan, his successor in office, and took his receipt therefor. The money was deposited with Bellmer, and by him turned over to Callahan, without any order of court or of the county auditor, and no entry of it was ever made in any of the county books. Callahan held the office of county treasurer during three successive terms, the last term ending on the first Monday of January, 1883. It does not appear what became of the money after it was given to Callahan. It was never demanded of him by plaintiff, or by any person in her behalf, nor paid to her or any one for her, nor was it turned over by him to his successor in office. Callahan died, and this action was afterward brought to recover the money, with interest, and costs, from the defendants, who were sureties on each of his official bonds.

The defendants answered to the complaint, and among other defenses pleaded that neither treasurer was authorized to receive the money sued for in his official capacity, and also that there was a defect of parties, because on

each of the bonds there was a large number of sureties who were not made parties defendant in the action.

At the trial defendants objected to all evidence showing the receipt of the money by the treasurer, and their objections were overruled. They also moved for a nonsuit upon the ground that there was a failure to prove any of the material allegations of the complaint, and this motion was denied. At the conclusion of the trial, judgment was entered in favor of the plaintiff, and from that judgment and an order denying a new trial this appeal is prosecuted.

When the mortgage referred to was foreclosed, the code provided that if there be surplus money remaining in a foreclosure proceeding after payment of the amount due on the mortgage, with costs, the court may cause the same to be paid to the person entitled to it, and in the mean time may direct it to be deposited in the court. (Code Civ. Proc., sec. 727.)

In April, 1864, an act was passed by the legislature, entitled "An act concerning moneys deposited in courts of record of this state." (Stats. 1863–64, p. 468.) The first section of the act provides that "in all cases in which the statutes of this state authorize the deposit of moneys in the courts of record of this state, the moneys so deposited shall be paid to the clerk of the court, who shall deposit them, in his name of office, with the treasurer of the county." The second section makes it the duty of the treasurer " to receive such deposits of moneys from the clerk of the court as special deposits, and to keep each deposit entirely separate from all other moneys under his control, and to give to the clerk making such deposits receipts for the same, which receipts shall state the court in which action is pending, and also the title of the action in which such deposit is made, and the amount so deposited." The third section provides that for the safe-keeping of all moneys so deposited the treasurer shall be responsible upon his official bond.

It is claimed for the appellants that this act was repealed when the codes took effect, on the first day of January, 1873.

Section 18 of the Code of Civil Procedure declares that " in all cases provided for by this code, all statutes, laws, and rules heretofore in force in this state, whether consistent or not with the provisions of this code, unless expressly continued in force by it, are repealed and abrogated."

If the act was repealed by this provision, it was because the subject of the act was one of the " cases provided for " by the code. We have not been cited to any sections of the code in force in 1873 which cover the ground occupied by the statute, nor do we know of any. Sections 572 and 573, Code of Civil Procedure, provide for a different case. In 1874 a new section was added, numbered 2104, which seems to take the place of the statute. In our opinion, the act was in force in 1873, and it controlled and justified the action of the clerk.

It is further contended that the treasurer was not authorized to receive the money from the clerk, because it was not accompanied by the certificate of the auditor, as provided in sections 4145 and 4217 of the Political Code. On the other hand, it is claimed for the respondent that these sections have no application to special deposits made by the clerk of a court of record.

However this may be, it is clear that the money was deposited and receipted for as required by the act of 1864. Bellmer received it without question, and held it during his term of office, and then turned it over to his successor. It was evidently his duty to so turn it over, and we can perceive no irregularity in the manner of his doing it. Now, if it be conceded that Bellmer received the money irregularly, does it follow that Callahan, after he received it, could embezzle it without any official responsibility? Suppose Bellmer had received from the tax collector public funds, without the certificate and

discharge required by the Political Code, and had regularly turned the money over to Callahan, could Callahan have embezzled that money and not be responsible for it on his official bond? We think not. It seems to us that when Callahan received the money in question, whatever irregularities there may have been in making the deposit with Bellmer, he received it in his official capacity, and was bound to pay it out on the order of the court, or turn it over to his successor in office.

The point that there was a defect of parties is not maintainable. Each of the bonds on which the defendants were sureties was in form joint and several. (Pol. Code, sec. 958.) Section 383 of the Code of Civil Procedure provides that "persons severally liable upon the same obligation or instrument . . . . may all or any of them be included in the same action at the option of the plaintiff." Under this section the plaintiff had the right at her election to join as defendants one or more or all the persons severally liable upon the same obligation or instrument. (*People* v. *Love,* 25 Cal. 526; *People* v. *Evans,* 29 Cal. 436.)

If the defendants are liable at all, we are asked to determine under which of the three bonds their liability arises. It was the duty of Callahan to safely keep the money and turn it over to his successor. In the absence of proof as to when it was misappropriated, the presumption must be that the misappropriation took place at the end of his last term, and the liability would therefore be under the last bond.

The judgment rendered in the case was in the ordinary form of a judgment for the recovery of money. That is not the proper form in a case like this, as was held in *People* v. *Love,* 25 Cal. 520, and in *People* v. *Rooney,* 29 Cal. 643. The case should be remanded to the court below, with directions to modify the judgment in accordance with the cases cited, and as modified it should stand affirmed.

FOOTE, C., and HAYNE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the cause is remanded to the court below, with instructions to modify the judgment in accordance with the views above expressed, and as so modified the judgment is affirmed.