[Civ. No. 1039.    Third Appellate District.—March 14, 1913.]

# H. L. MELANDER, Respondent, v. THE WESTERN NATIONAL BANK (a Corporation), Appellant.

BANKS AND BANKING—LIEN OF BANK ON DEPOSIT—MANNER OF PLEADING.—In an action against a bank to recover a deposit, the bank may assert its right to a lien, under section 3054 of the Civil Code, by way of answer; it need not set up its right by way of cross-complaint.

ID.—LIEN OF BANK—INDEBTEDNESS OF DEPOSITOR TO BANK.—A bank may, in the exercise of its right to a lien, appropriate the money or property in its possession belonging to a customer in the extinguishment of any matured indebtedness of the customer to the bank.

ID.—OBLIGATION OF DEPOSITOR TO BANK AS GUARANTOR.—A deposit may be appropriated by a bank, in the exercise of its right of lien, to the extinguishment of an obligation to which the depositor has bound himself as guarantor.

ID.—CHARACTER OF INDEBTEDNESS OF DEPOSITOR.—The right of a bank to the general lien authorized by section 3054 of the Civil Code is not tested by the character in which the customer becomes indebted to it, but solely by the fact that he is indebted to it in a balance due and accruing "in the course of business."

ID.—MUTUALITY OF INDEBTEDNESS BETWEEN BANK AND DEPOSITOR.—Under section 2807 of the Civil Code there may exist such mutuality of indebtedness between a bank and a depositor as will permit the claim of the former to be set off against the deposit of the customer.

ID.—WAIVER OF LIEN BY BRINGING ACTION AGAINST JOINT GUARANTOR.—The right of a bank to appropriate a deposit to the extinguishment of an obligation due it from the depositor as a guarantor is not waived, where there are two guarantors jointly or severally liable, by bringing an action against them jointly.

ID.—GUARANTY—OPTION TO HOLD GUARANTORS JOINTLY OR SEVERALLY.—The option vested in the obligee to hold joint and several obligors either jointly or severally, or both, remains in him until the debt or obligation is satisfied.

ID.—ELECTION TO HOLD GUARANTOR JOINTLY BY SUING ALL OF OBLIGORS.—Bringing an action against all the guarantors upon a joint and several guaranty does not constitute an election by the plaintiff to hold them merely and solely as joint parties, and he does not lose the right to the several liability of a several obligor until the obligation is fully satisfied, although in an action against all the debtors a judgment is obtained against some, but not against him because he has not been served with process.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Gavin McNab, B. M. Aikins, Geo. W. Mordecai, and Clarence Coonan, for Appellant.

Bernard Silverstein, for Respondent.

HART, J.—This is an appeal from the judgment entered upon and after an order sustaining the demurrer to the answer of the defendant.

The action was brought by the plaintiff to recover from the defendant the sum of $405.98, which is alleged to be a balance remaining of a deposit made by one Walter B. Lomax, with the latter.

The complaint alleges that "on or about the 11th day of August, 1909, the said defendant . . . appropriated said balance of $405.98 to its own use and benefit, and debited the account of said Walter B. Lomax with said sum of $405.98 and refused to pay said Walter B. Lomax said sum of $405.98, or any part thereof, although demand therefor has been made by the said Walter B. Lomax." It is further averred that, prior to the commencement of this action, "and for a valuable consideration, the said Walter B. Lomax transferred, sold and assigned to the plaintiff herein all right, title and interest in and to said sum of $405.98, . . . and any and all right of action against the defendant therefor, and said plaintiff is now the owner and holder thereof."

The defense set up in the answer is founded upon the alleged right of the defendant to appropriate the money sued for as explained in the complaint by virtue of the provisions of section 3054 of the Civil Code. The transaction out of which the said alleged right of lien arose is thus set out in the answer: "That on or about the 19th day of November, 1907, Mauvais Motor Car Company, a corporation organized and existing under the laws of the state of California, by its president and its secretary, duly authorized, made and delivered to defendant its promissory note in the words and figures following, to wit:

" '$2700.00          SAN FRANCISCO, CAL., Feby. 19th, 1907.

" 'On demand after date, for value received, Mauvais Motor Car Co., a corporation organized and existing under the laws of the State of California, promises to pay to The Western National Bank of San Francisco, likewise a corporation, or order, at its banking house in this city, the sum of twenty-seven hundred dollars, in United States gold coin, the present standard, with interest thereon in like gold coin from date until paid, at the rate of eight per cent per annum, said interest to be paid monthly, and if not so paid to be added to the principal and thereafter bear interest at the same rate. Should default be made in the payment of interest as herein provided, then the whole sum of principal and interest shall immediately become due and payable.

" 'MAUVAIS MOTOR CAR CO.,
" 'ROY MAUVAIS, Pres.
" 'W. B. LOMAX, Secy.' "

At the time of the execution of said note and as part of the same transaction and before the delivery of the note to the payee therein named, one Roy Mauvais and the said Walter B. Lomax indorsed their names on the back of said note and subscribed their names to the following writing, indorsed on the back of said note:

"SAN FRANCISCO, Feb. 19, 1907.

"For value received we or either of us guarantee the payment of the within note and interest according to its terms, and we or either of us hereby waive presentation thereof to the maker, demand of payment, protest and notice of nonpayment.

"ROY MAUVAIS,
"W. B. LOMAX."

It appears that, on or about the eighth day of October, 1907, the defendant instituted an action in the superior court in and for the county of Alameda against said Mauvais Motor Car Co., "the principal signer of said promissory note and against said Roy Mauvais and W. B. Lomax, as indorsers and guarantors thereof, defendants, to recover the sum then due upon said promissory note; that summons, directed to all of the defendants in said action, was duly and regularly issued therein, and delivered to the sheriff of the county of Alameda, state of California; that said summons, attached to

a copy of the complaint in said action, was . . . served on the defendants, Mauvais Motor Car Company and Roy Mauvais; that the defendant, said W. B. Lomax, could not be found, and said sheriff made his return of said summons, showing service of said summons on said Mauvais Motor Car Company and Roy Mauvais, and that said W. B. Lomax could not be found in said county of Alameda. No summons in said action was ever served on said W. B. Lomax, and said W. B. Lomax did not appear in said action; that the default of defendants Mauvais Motor Car Company and Roy Mauvais was regularly entered in said action, and judgment by default was duly and regularly made and entered against them in said action for three thousand and twenty-four dollars; that no judgment in said action was ever taken against said defendant, W. B. Lomax.''

The answer alleges that on the eleventh day of August, 1909, at which time the sum sued for here was appropriated by the defendant as alleged in the complaint, there had been paid upon said note, and the said judgment thereon, the sum of $481.35 and no more, and that ''at said time there remained due, owing and unpaid upon said note and said judgment the sum of $2,542.95, or thereabouts, besides interest; that at said time said Mauvais Motor Car Co., as principal, had not paid said balance so due upon said note and the judgment therefor, nor any part thereof, nor had said Walter B. Lomax and said Roy Mauvais, or either of them, as indorsers upon said note, paid the same or any part thereof, nor had said Walter B. Lomax and said Roy Mauvais, or either of them, paid the said balance due upon said note and judgment, or any part thereof, according to the terms of their said guaranty so indorsed on the back of said note, and the same was due, owing and unpaid from said Mauvais Motor Car Co., Roy Mauvais and Walter B. Lomax and each of them, to defendant,'' etc.

The answer then proceeds: ''That thereupon and while said note and the judgment thereon was still unpaid to the extent of $2,542.95, as aforesaid, defendant applied said balance of account of $405.98 in favor of said Walter B. Lomax as aforesaid, in payment of said promissory note and said judgment thereon, and credited the said sum upon said note and the judgment thereon, and charged said account of said

Walter B. Lomax with said sum of $405.98 as debit thereon, and has ever since retained said sum in part satisfaction of said note and the judgment thereon.''

The important point in this case is whether the defendant bank had the right to appropriate the deposit of Lomax to the payment of the note executed by the Motor Car Company, as principal, and Roy Mauvais and Lomax as guarantors, and this proposition presents for solution these questions, viz.: 1. May the deposit of a depositor be appropriated by a bank, in the exercise of its right of lien, to the extinguishment of an obligation to which the depositor has bound himself merely as a guarantor? 2. Did the original debt merge in the judgment obtained by the defendant against the Motor Car Company and Roy Mauvais?

Counsel for the respondent makes the preliminary point that the right upon which the defendant relies and which it pleaded as a defense to recovery by the plaintiff should have been set up in a cross-complaint. The argument advanced in support of this point is that the plaintiff was entitled to an opportunity to answer the claim of the defendant to the right of lien and to interpose any defense which he might have been able to set up against the exercise of that right; that, having been deprived of that opportunity, neither Lomax nor his assignee was given his ''day in court'' and was, therefore, denied ''due process of law.''

This contention is untenable. No formal procedure is pointed out or required for the exercise by a banker of the right of lien vested in him by section 3054 of the Civil Code. The provisions of that section were obviously intended to operate automatically in those cases to which the section is applicable, and, where the right is exercised, the validity of the action of the bank or banker in that regard may be challenged, as here, in an action instituted by the customer for the recovery of the money or property so appropriated. The banker, in such case, having already exercised his right of lien, is not in a position in which he desires or may ask for affirmative relief. All that was required of the bank, if it would resist the claim of the plaintiff, was to defend against recovery by the latter, and, naturally, in a case like this, its defense would consist of a special plea in bar, by way of confession and avoidance. Of course, the facts set up in the

answer constitute new matter, but where new matter is set up in an answer and such matter is not of a character which calls for affirmative relief in behalf of the defendant, the same is deemed to be denied without requiring, as was true at common law, where there was a long series of pleadings, a new pleading on the part of the plaintiff. (Code Civ. Proc., sec. 462.) And the plaintiff was entitled, under the state of the pleadings as they are presented here, to make any relevant showing which would have the effect of overcoming or rebutting the claim constituting the basis of the defendant's special plea in bar. (*Curtiss* v. *Sprague,* 49 Cal. 301; *Colton Land & Water Co.* v. *Raynor,* 57 Cal. 588; *Rankin* v. *Sisters of Mercy,* 82 Cal. 88, [22 Pac. 1134]; *Sterling* v. *Smith,* 97 Cal. 343, [32 Pac. 320]; *Baker* v. *Baker,* 9 Cal. App. 740, [100 Pac. 892].)

It is, of course, not disputed that it is settled law that a banker may, in the exercise of the right of lien vested in him, appropriate the money or property in his possession belonging to a customer in the extinguishment of any matured indebtedness of the customer to the bank. (Civ. Code, sec. 3054, *supra; John Marble Company* v. *Merchants' National Bank of Los Angeles,* 15 Cal. App. 347, [115 Pac. 59]; *McKean* v. *German American Savings Bank,* 118 Cal. 340, [50 Pac. 656]; 2 Bolles on Modern Law of Banking, p. 740; 1 Morse on Banks and Banking, sec. 324 et seq.; Zane on Banks and Banking, sec. 140.)

The section of our Civil Code above mentioned provides: "A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer for the balance due to him from such customer in the course of the business."

In Morse on Banks and Banking, the rule is thus stated: "When payment upon an overdraft, a discount, an acceptance, or other species of advance or loan by the bank to him (the customer) creates an indebtedness on his part, all the funds which the bank has or obtains to his credit may be applied upon such indebtedness until such indebtedness is fully discharged, and without any request or direction from him."

But the respondent, as against the right of the bank to claim its right of lien in this case, argues: 1. That the guaranty upon the note is a limited guaranty—that is, that

it is limited at the option of the holder of the note, and that the latter, having exercised that option by holding one of the joint guarantors only, waived any claim of liability against the other; 2. That the deposit of a guarantor cannot be appropriated by the bank in payment of the obligation of the principal; 3. That no such mutuality of indebtedness exists between the bank and a guarantor as will admit one claim to be set off against the other; and 4. That the original debt was merged in the judgment and no action can be maintained thereafter upon the original debt.

We find ourselves unable to agree to any of the foregoing propositions.

It will be convenient first to consider the second and third points as above stated, and these points may be considered together, since they in effect involve the same proposition of law—that is, that there is such a want of mutuality of indebtedness between a bank and a guarantor who has money or property in the hands of the bank as that the claim of the bank cannot be set off against such deposit.

Section 2807 of the Civil Code provides that "a guarantor of payment or performance is liable to the guarantee immediately upon the default of the principal, and without demand or notice." Under the terms of that section, immediately upon the default of the principal the guarantors become liable, and suit may thereupon be maintained against them without demand or notice, the guaranty being absolute and unconditional. (*Pierce* v. *Merrill*, 128 Cal. 464, 469, [7 Am. St. Rep. 56, 61 Pac. 64], and cases therein cited; *Carpenter* v. *Furrey*, 128 Cal. 665, 668, [61 Pac. 369].) The guarantors, upon the default of the principal, instantly became, equally with the principal, the debtors of the bank for the amount of the obligation guaranteed, and no less reason can be assigned why the bank should not be entitled to exercise its right of lien as to property or money in its hands belonging to them than if they had become its debtors in some other manner than as guarantors. The right of the bank to the general lien authorized to it by section 3054 of the Civil Code is not to be tested by the *character* in which the customer becomes indebted to it, but solely by the fact that he is indebted to it in a balance due to it and accruing "in the course of business." That the indebtedness of Lomax to

the bank was "due to it in the course of business," within
the meaning of that language as used in section 3054 of the
Civil Code—that is, that the indebtedness became due to the
bank in the usual or ordinary course of its business as a
bank—is a proposition too self-evident to require argument
to support it. The money upon the note the payment of
which was guaranteed by Lomax was obtained from the bank,
presumably upon the faith of the guaranty, and, as seen, the
principal having defaulted in the payment thereof, the lia-
bility of the guarantors to pay the same to the bank at once
attached and the obligation to pay then became equally as
binding upon the guarantors as it was upon the principal.
And the contract of guaranty being joint and several, the
bank, upon the default of the principal, was immediately
vested with a right of action against either of the guarantors
which could have been satisfied by a several judgment. (Code
Civ. Proc., sec. 383.) Indeed, Mauvais and Lomax were
jointly and severally liable on the note in a double aspect,
legally, for, as appears from the answer, they were not only
liable jointly and severally upon their contract of guaranty,
but so bound with the principal as indorsers.

Of course, the contention that a banker cannot offset the
money or property of a guarantor, if it has any foundation
at all, must rest upon the proposition that there is no mu-
tuality of indebtedness between the bank and such customer.
And this is precisely what counsel for the plaintiff insists
upon here, citing in support of that position 5 Cyc., p. 550,
and *Dawson* v. *Real Estate Bank*, 5 Ark. 283.

It is merly said in the text in Cyc., at the page above men-
tioned, speaking of the right of a bank to apply the deposit
of its customer to the payment of the debts of the latter due
to it, that, "in order for the bank to have this right, the
same mutuality must exist between the parties as is required
in other cases of set-off, and the deposit must belong to the
person who is indebted to the bank," and then it proceeds
to specify certain occasions on which the banker has no right
to a lien upon the funds in his possession belonging to the
customer—where, for instance, money is held in trust by the
customer and deposited for the purpose of subserving the
ends of the trust, or where the customer, has himself spe-
cifically appropriated the funds deposited to a particular

purpose, etc. But nowhere in the text is it declared that there cannot be such a mutuality of indebtedness between a bank and a customer, who has become indebted to it by reason of having been a guarantor of the payment of an obligation to the bank, as to admit the claim of the bank to be set off against the deposit of the customer.

The Arkansas case relied upon by the respondent and referred to above undoubtedly sustains the respondent's position that there cannot exist as between a bank and a guarantor such mutuality of indebtedness as will authorize the offsetting of their claims against each other, but the rule adopted in that case as to that proposition was expressly and explicitly overruled in the subsequent case of *Leach* v. *Lambeth*, 14 Ark. 668. There may be other cases than that in the 5th Arkansas which hold to the rule as contended for by respondent, but we would not be able to understand the theory of such ruling under a statute which, like ours, declares that, upon the default of the principal, a guarantor, *eo instanti et ipso facto,* becomes liable to the guarantee upon the guaranty, without demand or notice, and, therefore, liable for the performance of the obligation guaranteed by him.

By the proposition that the obligation to which Mauvais and Lomax bound themselves constituted a ''limited guaranty,'' we understand counsel to intend to say that the defendant, under the terms of the guaranty, was limited to the right to hold the guarantors either to a joint or a several liability, that it could not hold them both jointly and severally and that, having, as it is asserted it did, proceeded against them jointly, it thus waived its right to proceed against them severally. But we do not so understand the meaning and scope of the obligation to which Mauvais and Lomax bound themselves, either as guarantors or indorsers.

There can be no doubt, of course, that the defendant was given the right by the guaranty to hold the guarantors either jointly or severally, but this right did not cease by the mere bringing of the action against all the parties to the obligation. Obligations or contracts to which two or more parties bind themselves, both jointly and severally, simply mean that they thus promise to stand ready to perform the obligation or contract together or jointly as one party, or, in the event that satisfaction of the obligation cannot thus be obtained,

that each binds himself to perform it severally, as if in the first place it imposed upon him exculsively an individual or several liability. Therefore, the "option" vested in the obligee to hold the joint and several obligors either jointly or severally or both remains in the obligee until the debt or obligation is satisfied.

But in this case, as in all cases where the obligation declared upon is joint and several, the obligee did not proceed against the obligors jointly in the sense that thus it was confined in a recovery upon a joint liability. True, it, *ex necessitate,* joined them all in one action, as would have been the proper practice had it sued upon several distinct contracts by the same parties relating to the same transaction, some of which involved joint and others joint and several liabilities ( Code Civ. Proc., secs. 427 and 383), but, necessarily, an action upon a contract involving as against the obligors joint *and* several liabilities is an action upon all the contracts involved therein, and necessarily, therefore, an action thereon against all the promisors is an action against them to recover both upon their joint and their several liability. In other words, they are at one and the same time sued upon their joint contract and upon their several contract. The rule is thus stated, in 9 Cyc., p. 656: "Several persons may enter into concurrent contracts respecting the same matter, binding themselves jointly as one party and also severally as separate parties, at the same time, in which case, besides the one joint contract, there are as many several contracts as there are separate persons, the debt or matter of the contract being one and the same in all the contracts thus made. A joint and several contract is a contract with each promisor and a joint contract with all; therefore, in a joint and several contract there is one more contract than there are promisors."

It is, of course, very clear, from the fact that the defendant made Lomax a party to the action on the note and guaranty, that it did not intend to waive, nor did it waive, its right to a performance of the obligation by Lomax as a several obligor.

But counsel vigorously presses upon us the applicability here of the common law rule "that a judgment against several *joint debtors* is a bar to an action against the others," the theory of that rule being that the creditor thus elects to

take such judgment, in which case the extinguishment of his cause of action as to the others by a recovery of such judgment is presumed to have been intended by him. (*Heckemann* v. *Young,* 134 N. Y. 170, [30 Am. St. Rep. 655, 31 N. E. 513].) For the support of this position counsel chiefly relies upon the very early case of *Stearns* v. *Aguirre,* 6 Cal. 176, and it is to be conceded that that case unquestionably sustains counsel's view of the question.

The action in that case was upon a joint and several promissory note jointly against the two defendants. Service of process upon both defendants was obtained and Aguirre answered and the other, Arguello, defaulted. As against the latter, a final judgment by default was entered, and afterward, upon a trial of the cause, judgment was rendered and entered against Aguirre. At said trial, objection was made by Aguirre to the introduction of the note in evidence upon the ground that ''since the issue was made in this cause, the plaintiff has taken a several judgment against Arguello, whereby the note offered in evidence had become merged and extinguished in a higher security, and imported no subsisting joint indebtedness or liability of the defendants.'' The trial court overruled the objection, and the supreme court reversed the judgment, holding that ''in all cases of joint and several contracts, the plaintiff may elect whether he will sue the defendants severally or jointly. Having elected to treat his demand as joint, for the purposes of the action, he must be governed by the same rules which would have applied, if his contract originally had been joint, and not joint and several, and it is clearly error to enter several judgments against the defendants.'' Again, the court said: ''In an action brought jointly against two defendants on a joint and several obligation, the entry of final judgment on default against one of the defendants is a discharge of the other.''

It will be observed that that case went to the full length of the common law rule; but it has been disapproved, at least in part, in subsequent decisions of the supreme court. In the case of *Lewis* v. *Clarkin,* 18 Cal. 399, the court held that the common law rule as applied in the Stearns case above referred to was modified by the provisions of the Practice Act [Stats. 1851, p. 51], to the extent that, under the Practice Act, an acquittal of one of the defendants in an action upon

a joint and several contract of the obligation to perform it did not deprive the plaintiff of the right to a several judgment in the same action against the other defendant. And in that case the court uses language which involves an intimation that the code provisions had modified or changed the common law rule in other respects. It said: "It is unnecessary for us to determine whether this is the extent to which the provisions of the statute should be regarded as modifying the rule at common law; but the courts of New York, under precisely similar provisions, have gone much further."

In *People* v. *Love,* 25 Cal. 521, the action was upon a joint and several bond. The court there says: "The fifteenth section of the Practice Act provides that 'persons severally liable upon the same obligation or instrument . . . may all, or any of them, be included in the same action, at the option of the plaintiff.' This section changes the common law rule, that one or all, and not any intermediate number, may be sued. Under this section a plaintiff may, at his election, sue one or more, or all persons severally liable upon the same obligation or instrument." Thus it will be noted that the court holds directly against the decision in *Stearns* v. *Aguirre,* 6 Cal. 176, that an action against all the obligors on a joint and several obligation or instrument is an election to hold them jointly and not jointly and *severally.* (See *Heppe* v. *Johnson,* 73 Cal. 270, [14 Pac. 833], *Hurlburt* v. *N. W. Spaulding Saw Co.,* 93 Cal. 55, 58, [28 Pac. 795].)

In *Kurtz* v. *Forquer* 94 Cal. 91, [29 Pac. 413], the action was upon a joint and several bond. The complaint alleged that the bond was executed by the defendants, Forquer and Deyo, as principals, and the defendants, Allen, Smith, and Stewart, as sureties. It appeared that Forquer and Deyo had not signed the bond and it was objected by the other defendants that for that reason the instrument created no liability against them, and the cases of *Sacramento* v. *Dunlap,* 14 Cal. 421, and *People* v. *Hartley,* 21 Cal. 585, [82 Am. Dec. 758], were cited in support of the objection. The court said, however: "But they are not in point, because in those cases the bonds sued on were strictly joint, and not several; while in the case at bar the obligation is joint *and* several. (*People* v. *Love,* 25 Cal. 530.) In such case the obligors

"may all, or any of them be included in the same action, at the option of the plaintiff. (Code Civ. Proc., sec. 383.)"

The case of *Bailey Loan Co.* v. *Hall*, 110 Cal. 490, [42 Pac. 962], appears to be very much in point here. The complaint in the action in that case declared upon certain promissory notes purporting to have been executed and delivered to the plaintiff by "H. G. Hall & Sons." The plaintiff instituted the action against three defendants, the complaint alleging that they constituted a partnership bearing the name of "H. G. Hall & Sons," and that they made the notes to the plaintiff. Two of the defendants suffered default and the other defendant answered the complaint, denying that he was a member of the firm at the time the notes were executed. The cause was tried and judgment rendered in favor of the plaintiff against the defaulting defendants and in favor of the answering defendant. The defendants who defaulted and against whom judgment was rendered appealed "upon the ground that, as the action was brought upon a partnership obligation against three defendants, the court was not authorized to enter a judgment by default against two only." The court, in disapproving that proposition, said:

"Section 578 of the Code of Civil Procedure provides: 'Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants.' In *Lewis* v. *Clarkin*, 18 Cal. 399, it was held that by this section the rule at common law, that in an action upon a joint contract the plaintiff must recover against all or none, was abrogated, and that in such action the plaintiff was entitled to a judgment against those defendants merely who were shown to be liable upon the obligation. (See, also, *People* v. *Frisbie*, 18 Cal. 402; *Shain* v. *Forbes*, 82 Cal. 583, [23 Pac. 198]; *Harrington* v. *Higham*, 15 Barb. (N. Y.) 524; *McIntosh* v. *Ensign*, 28 N. Y. 169.) The terms of this section do not limit the rule to actions in which the defendants have appeared and answered, but include as well those in which some of the defendants have made default, the only limitation in such case being that found in section 580, that the relief shall not exceed that which the plaintiff shall have demanded in the complaint." (See *Randall* v. *Hunter*, 69 Cal. 80, [10 Pac. 130]; *Shain* v. *Forbes*, 82 Cal. 583, [23 Pac. 198]; *At-*

*lantic & Pacific Ry. Co.* v. *Mary J. Laird,* 164 U. S. 401, [41 L. Ed. 485, 17 Sup. Ct. Rep. 120].)

In *Cole* v. *Roebling Construction Co.,* 156 Cal. 443, [105 Pac. 255], the principle above discussed, in its application to actions sounding in tort, is shown to be thoroughly settled in this state. No reason other than absence of statutory authority can be suggested why the same principle should not as well be applicable in actions on contract, and the cases above examined very clearly establish that, under sections 383 and 578 of the Code of Civil Procedure, it is a rule applicable to the latter class of actions.

The result deducible from those decisions is, as before stated, that the common law rule as applied in the case of *Stearns* v. *Aguirre,* 6 Cal. 176, has been expressly abrogated at least to the extent that the bringing of an action against all the obligors upon a joint and several contract does not constitute an election upon the part of the plaintiff to hold the obligors merely and solely as joint parties and consequently to waive the right to hold them to their several liability, but that an action so brought upon a joint and several obligation is upon all the contracts or obligations involved in such a contract. And as necessary corollary of the rule as thus established, the obligee does not lose the right to the several liability of a several obligor until the obligation is fully satisfied, notwithstanding that in an action against all the debtors a judgment is obtained against some but not against him, because he has not been served with process and so subjected to the jurisdiction of the court. In other words, the mere fact that the bank was unable to secure upon Lomax service of process whereby he could have been subjected to the jurisdiction of the court in the action and to any judgment therein entered does not in law authorize the presumption that it waived the several liability of Lomax. Indeed, it seems to us that, as to a joint and several obligation, it would involve a palpable inconsistency in logic to say that the several liability of the debtor not served is merged in a judgment joint and several against his codebtors. But the right of the creditor to pursue, in satisfaction of the debt that is due to him, the several liability of the debtor not served and who is not bound by the judgment against his co-obligors and who has not been, like his co-obligors, discharged from the original

obligation, is but the ineluctable consequence of certain of our statutory provisions. Among these are sections 414 and 579 of the Code of Civil Procedure. The first named of these sections provides: ''When the action is against two or more defendants, jointly or severally liable on a contract, and the summons is served on one or more, but not on all of them, the plaintiff may proceed against the defendants served in the same manner as if they were the only defendants.'' The other of said sections reads: ''In an action against several defendants the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment is proper.''

The last quoted section clearly implies that in an action against a number of obligors and where a several judgment may be proper—where the action, for instance, is upon a joint and several obligation—there may be as many judgments entered as there are parties defendant and that the separate or several judgments against them need not be entered at the same time. In fine, the two sections seem to contemplate just such a case as the present one and that where service of process is not had upon all the several defendants, a judgment may be entered against those served and thereafter against the others, if judgment is obtained against them by default or otherwise.

This conclusion is in accord with the general rule as it is laid down by the English and most of the American cases, including the later adjudications of the question by the United States supreme court. The cases upon the subject may be found in the foot-notes at page 1210 of the 23d volume of Cyc., where, in the text, the rule is thus stated: ''Where the contract or obligation is joint and several it is not merged in the judgment against one of the contractors, and such judgment remaining unsatisfied will not bar an action against another of the debtors.''

In the English case of *King* v. *Hoare,* 2 D. & L. 383, Baron Parke stated the rule to be: That a judgment against one of two joint debtors merged the debt and foreclosed an action against the other debtor, but that where the contract was joint and several, the rule was otherwise.

Referring to the last mentioned case in *In re Davidson,* 13 Q. B. Div. 50, Justice Cave said: ''There it was held that a

judgment without satisfaction against one of two *joint* oblig-
ers is a bar to an action against the other, but it was pointed
out both at the bar and in the judgment that the law is other-
wise when the obligation is both joint and several.'' (See
the following English cases: *Whiteacres* v. *Hamkinson,* Cro.
Car. 75; *Blumfield's Case,* 5 Coke 86b; *Hayling* v. *Mullhall,*
2 W. Bl. 1235; *Ayrey* v. *Davenport,* 2 Bos. & P. N. R. 474;
*Claxton* v. *Swift,* 1 Lutw. 362; *Brown* v. *Wootton,* Cro. Jac.
73; *Dyke* v. *Mercer,* 2 Show. 394—these cases are cited in
note, 43 L. R. A. 163.)

There are many American cases which hold to the same
rule. They are also cited in the foot-note, at page 163, vol.
43, L. R. A. Since those cases all agree upon the proposition
as it is announced in the English cases above adverted to, it
is deemed sufficient, as in illustration of the reason of the
rule as well as of the reasons which distinguish actions upon
joint contracts and those upon joint *and* several contracts in
the respect referred to here, to give special notice to but one
of them.

In *Sayre* v. *Coleman,* 39 Ky. (9 Dana), 173, the principle
under consideration is expounded with great clearness and
learning. In that case, where the action was upon a joint and
several obligation, one of the defendants was not served with
process, and judgment was taken against the others, who
were served. Judgment was thereafter obtained against the
obligor not originally served, and the contention on his appeal
was that the debt or obligation had been extinguished by the
judgment against the others. The Kentucky supreme court,
refusing to accept that view, said: ''But conceeding, as a
majority of the court is inclined to do—that, according to the
principles of the common law, such a judgment would be a
bar in the case of joint obligors, it is so because of the
unity or entirety of the obligation; the consequence of which
is, that whatever releases or extinguishes the cause of action
as to one, has the same effect as to the other, there being no
power to discriminate between them in this respect. And as
the plaintiff is bound, whenever he sues upon the contract,
to sue them jointly, and to make out a joint subsisting liabil-
ity against all under the contract alleged in his declaration,
of course, the judgment which has merged the liability of
some of the co-obligors, is a bar to a second suit, either against

them or the others. But in the case of a joint and several obligation, the fundamental principle on which these consequences rest is wanting. There is a several obligation and liability resting upon each obligor, independent of that which rests upon the others. The release of one without satisfaction, does not necessarily release the others; and we do not see how or why the merger or extinguishment of the cause of action in any other mode as to one should merge or extinguish it as to another, who is separately bound, until the debt or duty is itself discharged.''

The rule as thus so well announced is sound, eminently just and, as before shown, in perfect harmony with the letter and spirit of our statutory provisions.

Even with respect to actions upon joint contracts, the rule of the common law has been modified by our statute, and in such actions in this state the original debt or obligation does not, as at common law, *ipso facto,* merge in a judgment which is not obtained against all the obligors against whom the action is brought. (Code Civ. Proc., sec. 989 et seq.) By that section, when a judgment is recovered against one or more of several persons, *jointly* indebted upon an obligation, ''by proceeding as provided in section four hundred and fourteen, those who were not originally served'' may, by the proceedings pointed out by that and succeeding sections, be brought in and bound by the judgment already entered against their co-obligors. And this suggests that one of the contentions of the plaintiff is that the only way in which the defendant here, after recovering judgment against the Car Company and Mauvais, could have compelled Lomax to have borne the burden of his obligation was by proceeding against him under the sections just referred to (sec. 989 et seq.) and thus have made him a party to the judgment. It is further contended that the proceedings prescribed by these sections constitute the exclusive mode by which, under the circumstances, the defendant could secure satisfaction of the original debt by Lomax. This position, it is asserted, is sustained by the cases of *Tay* v. *Hawley,* 39 Cal. 93, and *Cooper* v. *Burch,* 140 Cal. 548, [74 Pac. 37.] But these cases go no further than to hold that, where an action is brought upon a judgment recovered in an action wherein a number of parties have been joined as defendants, some of whom were not served prior to

the entry of such judgment, those not served cannot be bound by the judgment unless they have subsequently been brought in and subjected to the operation thereof through the proceedings prescribed by the code sections last referred to. Speaking of the requirements of those sections of the code, Chief Justice Rhodes, speaking for the court, declared that those proceedings furnish the *exclusive mode* by which a defendant not served may be bound by the judgment, "and they necessarily imply that he is not already bound by it." All this is absolutely sound and would be equally so in the case at bar if the action here were by the defendant upon the judgment against the Car Company and Mauvais, Lomax not having been bound by said judgment by the proceedings authorized by section 989 et seq. of the code.

But the court, in *Tay* v. *Hawley*, added: "Were it not for the statute, no action could be maintained against him on the contract, for the reason that it would become merged in the judgment, and the merger is restrained only for the purpose and to the extent of enabling the proceedings to be had, as prescribed in the statute." This language is construed by the respondent here as in support of his contention as to merger. But the contract in that case involved a joint and, not, as here, a joint and several obligation.

Section 989, however, seems to have exclusive reference to persons *jointly* indebted upon an obligation or bound by a joint contract, and there is nothing in any of the succeeding sections under that chapter and relating to the subject matter of the first mentioned section indicating that persons other than joint debtors or obligors are contemplated by the proceedings therein prescribed. But, while it is perhaps true that the defendant, by a resort to the proceedings referred to, could have bound Lomax to the joint judgment against the other parties (and we do not say that thus a several judgment could not also have been recovered against him—no authorities have been cited to the point), yet, since, as we have shown, his several liability on the original obligation survived the judgment or still retained its integrity, the bank could not be deprived of the right to its remedy by lien by reason of the fact that it had available to it another and different remedy. The most that can be said of the situation is that the two remedies were, under the circumstances of

this case, merely cumulative and the bank was at liberty to resort to either for the satisfaction of its demand against Lomax.

Our conclusion is that the answer of the defendant stated a legal defense to the claim of the plaintiff, and that the order sustaining the demurrer thereto was, therefore, erroneous.

The judgment is reversed, with directions to the court below to overrule the demurrer to the defendant's answer.

Chipman, P. J. and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 13, 1913.